LANDEEN, Respondent, *v.* TOOLE COUNTY REFINING CO. et al., Appellants.

(No. 6,479.)

BAXTER et al., Respondents, *v.* TOOLE COUNTY REFINING CO. et al., Appellants.

(No. 6,478.)

(Submitted April 4, 1929.   Decided May 13, 1929.)

[277 Pac. 615.]

*Messrs. Freeman, Thelen & Freeman,* for Appellants, submitted a brief in each cause; *Mr. Jas. W. Freeman* argued the causes orally.

*Mr. Louis P. Donovan,* for Respondent Ethel M. Landeen, submitted a brief, and argued the cause orally.

, *Messrs. McKenzie & McKenzie,* for Respondent Sadie McDonald Olson, submitted a brief; *Mr. John McKenzie, Jr.,* argued the cause orally.

*Messrs. Cheadle & Kelly,* for Respondent A. F. Dennis, submitted a brief.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

These are appeals from judgments of the district court affirming awards made by the Industrial Accident Board, and making additions thereto.

In October, 1927, Toole County Refining Company was engaged in the manufacture of gasoline at its plant in Toole county, and the Employers' Liability Assurance Corporation was its insurance carrier.

The refining company maintained a bunkhouse on its premises for the convenience of itself and its employees. This was heated by gas conducted through a pipe from the main gas line to a heater, and gas was turned into the bunkhouse line for the first time, after the summer, on the evening of October 3. In the summer an employee had removed a cook stove from the bunkhouse, leaving the pipe with which it had been connected underneath the floor open, thus permitting the gas to escape in considerable quantities. On that night, October 3, H. E. Landeen, the manager, and three other employees, John Olson, A. F. Dennis, and E. M. Baxter, slept in the bunkhouse. About 6 o'clock the next morning the men arose, and, upon Olson's attempting to light the gas heater, an explosion occurred, which caused the death of himself and Landeen, and severe injuries to Dennis and Baxter. Claims for compensation were made, respectively, by the widows of Landeen and Olson and by Dennis and Baxter. The Industrial Accident Board, after a hearing, made an award in each case. There are two appeals and a transcript in each, one from the Landeen award and the other from the awards in the Olson, Dennis and Baxter cases. All the testimony was taken at one hearing, and we shall dispose of both appeals in one opinion.

*Landeen Appeal.*—There seems to be no controversy over the facts in this case. Landeen was appointed manager in July,

1927. It was his duty to supervise the physical operations of the plant and to work at whatever was necessary to be done. He was to reside upon the premises, and the bunkhouse was his place of rest. He was required to be available for duty at any time, day or night. It is conceded that Landeen's death was the result of an accident arising out of and in the course of his employment. He died of his injuries on October 6, 1927.

A physician testified that his services in caring for Mr. Landeen, together with the expenses of a nurse, ambulance, drugs and dressing would amount to approximately $75, but the exact amount was not given. The funeral expenses paid by Edith M. Landeen, his widow, amounted to $335. The board awarded Mrs. Landeen 400 weeks' compensation at the rate of $15 per week. During the hearing, she applied to the board, asking that the weekly payments be converted into a lump sum, but the board did not act upon the application.

The insurance carrier moved for a rehearing, which was resisted by Mrs. Landeen in writing, but therein she requested, in addition to the award made by the board, that she also be allowed the reasonable burial expenses of her husband to the extent of $150, and also the ''expenses necessarily and reasonably incurred by her for medical treatment, hospital services, and medical supplies furnished to the deceased employee in the amount shown by the evidence introduced upon the hearing.'' The board denied the rehearing, and ordered that the insurance carrier ''immediately pay the medical and hospital bills of claimant, as required by law,'' and also immediately pay $150 on the funeral expenses of the deceased, such payment to be made either to the undertaker, or to the claimant, if the expenses had been paid by her. This order was made April 10, 1928. The insurance carrier then appealed to the district court.

Upon appeal, the case was heard upon the record certified by the board. The court approved the findings of the board in all respects. In addition, it found that Mrs. Landeen's

application to convert the monthly payments into a lump sum payment should be granted, and that the worth of the weekly payments required by the Act, capitalized at the rate of 5 per cent per annum, is $5,155; that Mrs. Landeen is entitled to recover from the defendant the sum of $150 to be applied upon the burial expenses; and that appellant should pay the reasonable medical, surgical, and hospital services and medicines required in the treatment of Mr. Landeen before his death, which amount the court was unable to ascertain from the record; and rendered judgment accordingly. From the judgment both the employer and the insurance carrier, hereafter called the defendants, appealed to this court.

1. Defendants assign as error the court's action converting the monthly payments into a lump sum payment and fixing the amount thereof.

The authority for such action is contained in section 2926 of the Revised Codes of 1921: "The monthly payments provided for in this Act may be converted, in whole or in part, into a lump sum payment, which lump sum payment shall not exceed the estimated value of the present worth of the deferred payments capitalized at the rate of five per centum per annum. Such conversion can only be made upon the written application of the injured workman, his beneficiary, or major or minor dependents, as the case may be, and shall rest in the discretion of the board, both as to the amount of such lump sum payment and the advisability of such conversion. The board is hereby vested with full power, authority, and jurisdiction to compromise claims and to approve compromises of claims under this Act; and all settlements and compromises of compensation provided in this Act shall be absolutely null and void without the approval of the board." In view of the language of this section, we have no doubt that the power to convert the monthly payments into a lump sum payment is reposed, in the first instance, in the Industrial Accident Board. The question "shall rest in the discretion of the board, both as to the amount of such lump sum payment and the advisability

of such conversion." Experience has demonstrated that lump sum awards should be the exception rather than the rule. (*Lincoln Water & Light Co.* v. *Industrial Commission*, 332 Ill. 64, 163 N. E. 381; Harper's Workmen's Compensation, 2d ed., sec. 185.)

"The fundamental basis of workmen's compensation laws is that there is a large element of public interest in accidents occurring from modern industrial conditions, and that the economic loss caused by such accidents shall not necessarily rest upon the public but that the industry in which the accident occurred shall pay, in the first instance, for the accident. (*Clark Co.* v. *Industrial Commission*, 291 Ill. 561, 126 N. E. 579.) Generally, the best interest of the disabled workman or his dependents will be best served by paying the compensation in regular installments as wages are paid. Such payments supply in a measure the loss of the regular pay check." (*Sangamon County Mining Co.* v. *Industrial Commission*, 315 Ill. 532, 146 N. E. 492.)

"Commutation being a departure from the normal method of payment is to be allowed only when it clearly appears that the condition of the beneficiaries warrants such a departure, but there should be no hesitancy in permitting such departure where the best interests of the parties demand it." (Honnold on Workmen's Compensation, sec. 179.)

The determination of this question requires the exercise of a sound discretion. The board is more favorably situated than is the court to familiarize itself with the circumstances surrounding the applicant, to consider his needs, and the results which probably will follow action granting or denying the application; the power "must be exercised in conformity with the spirit of the law and so as to best promote the ends of justice." (Id.; *Reteuna* v. *Industrial Commission*, 55 Utah, 258, 185 Pac. 535.)

Having entered its order granting or denying the application, the board's decision will not be disturbed upon appeal, except for an abuse of its discretion. (*Sullivan* v. *Anselmo*

*Mining Corporation*, 82 Mont. 543, 268 Pac. 495; *Reteuna* v. *Industrial Commission, supra; Stephenson* v. *State Industrial Commission*, 79 Okl. 228, 192 Pac. 580.)

The board did not pass upon the application of the claimant in this case when it rendered its decision, but we do not draw any special inference from that. It may have intended to postpone consideration upon that point. It was not required to decide whether it would or would not commute the payments to a lump sum payment at the time it made its decision, but could have done so afterwards.

Section 2952, Revised Codes, 1921, provides: "The board shall have continuing jurisdiction over all its orders, decisions, and awards, and may, at any time, upon notice, and after opportunity to be heard is given to the parties in interest, rescind, alter, or amend any such order, decision, or award made by it upon good cause appearing therefor. Any order, decision, or award rescinding, altering, or amending a prior order, decision, or award, shall have the same effect as original orders or awards." (And see section 2956.)

It may be that the board was halted in determining this question by the motion for rehearing and the consequent appeal to the district court.

Section 2959 provides for an appeal to the district court "for the purpose of having the lawfulness of the original order, decision. or award, or the order, decision, or award on rehearing inquired into and determined." Under the provisions of section 2960 the court may, upon the hearing, for good cause shown, permit additional evidence to be introduced, but, unless permission is granted, the cause must be heard on the record of the board as certified to the court. Upon the trial, the court "shall determine whether or not the board regularly pursued its authority, and whether or not the findings of the board ought to be sustained, and whether or not such findings are reasonable under all the circumstances of the case." Section 2961 provides that, if the court shall find that the findings and conclusions of the board are not in accordance with either the

facts or the law, or that they ought to be other or different from those made by the board, or that any finding, conclusion, or any order, rule, or requirement of the board is unreasonable, the court shall modify or change the same as law and justice shall require, and the court shall also make and enter any finding, conclusion or judgment that shall be required, "or shall be legal and proper in the premises." But the wording of this last-quoted section must not be construed to mean that the district court has power to commute monthly payments into a lump sum payment when the board has not been asked to take that action. As to that matter it may act only in review. What was said in *Sullivan* v. *Anselmo Mining Corp.*, *supra*, must not be considered contrary to what is here said. In that case an application to convert monthly payments into a lump sum had been applied for, and the board had granted the application.

It is noteworthy that the record does not disclose that any investigation was made as to whether the conversion sought should be granted. No evidence was received upon the point. The district court's order is based alone upon the written application made by Mrs. Landeen. It is erroneous.

2. It is argued that the court erred in ordering that "the defendants pay the reasonable medical and surgical services rendered, and medicines required and needed by the said H. E. Landeen before his death, the amount of which the court is unable to ascertain from the record in this case." It is said that the court did not fix any maximum sum whatever, and, under the broad language used, defendants may be compelled to pay the claimant "any and all hospital, medical and surgical services rendered and medicines used by the said H. E. Landeen during his entire lifetime up to his death."

Section 2917, as amended (1925 Session Laws, Chap. 121, p. 209), provides: "During the first six months after the happening of the injury, the employer or insurer or the board, as the case may be, shall furnish reasonable medical, surgical and hospital service and medicines when needed, not exceed-

ing in amount the sum of five hundred dollars, unless the employee shall refuse to allow them to be furnished, and unless such employ [employee] is under a hospital contract, as provided in section 2907 of this Act." Under this section it is clear that the defendants are liable only for the medical, surgical and hospital services and medicines needed from the time of the happening of the injury to the death of Landeen. The order of the court must be given a reasonable interpretation in the light of the statute, and, when this is given, the contention of defendants has no substantial basis.

3. Defendants also assign error by reason of the fact that the $150 allowed for burial expenses was included in the amount of the lump settlement, with a provision that the entire sum should bear interest at 8 per cent per annum from the date of the judgment until paid. There would have been no error in this if the judgment requiring a lump sum payment were legal. Under the decretal order, the sum of $150 is not segregable from the total amount, and the point must be sustained. But the board on April 10, 1928, ordered the defendant insurance carrier to pay the sum of $150 to apply on the burial expenses, and, when judgment is again entered, it should include interest on the sum of $150 from April 10, 1928, until paid.

*Olson, Baxter, and Dennis Appeal.*—The board found that the injuries sustained by Olson, Baxter and Dennis arose out of and in the course of their employment, and made an award in favor of each claimant. The insurance carrier applied for a rehearing, which was denied. In the order denying a rehearing, the carrier was ordered to pay immediately $150 on the funeral expenses of John Olson. This was on April 10, 1928. Both companies then appealed to the district court, which proceeded to determine the cases upon the record certified by the board. While the case was pending in the district court, Sadie McDonald Olson, widow of John Olson, made a written application asking that the monthly payments at the rate of $15 per week for a period of 400 weeks as fixed by the board be converted into a lump sum payment.

In the *Olson Case* the court affirmed the findings of the board, with additions; it made findings to the effect that Mrs. Olson is entitled to $5,155.27 upon the lump settlement, and $150 to apply upon the husband's burial expenses; also a finding similar to that made in the Landeen case as to medical, surgical, and hospital services. In the decretal order it included the $150 with the $5,155.27, and awarded interest on the entire sum from the date of the judgment.

In the *Baxter* and *Dennis Cases* the court affirmed the findings of the board, with the addition in each case that defendants immediately pay the reasonable charges incurred for medical, surgical, and hospital service and medicines needed by the claimant during the first six months after the happening of the injury, not exceeding in amount the sum of $500, "the amount of which said charges the court is unable to ascertain from the record, and therefore leaves the same to be ascertained by the Industrial Accident Board, or in such other proceedings as may be appropriate." The defendants thereupon appealed to this court.

The plant of the refining company is one mile from Oilmont and seven miles from Kevin. While living accommodations for the employees could be had at Kevin, that was practically impossible at Oilmont. The refining company once had employed men who did not live at the plant, but this was found unsatisfactory. To obviate that condition, the company built a bunkhouse at the plant for the use of its employees. The board found from the testimony that Landeen, Olson, Baxter, and Dennis were employed with the understanding that they were to live at the bunkhouse. After a careful analysis of the testimony, we cannot say there is not substantial proof to warrant the finding. We think the proof warrants the assertion that the contract of employment contemplated that these men should sleep there. As we have seen, there is no doubt of this with respect to Landeen. The proof is nearly as strong with respect to Olson. He was hired by Peterson, the president of the company, with the understanding that Olson would move

from Shelby, where his family lived, and live at the plant, stay on the job, and sleep in the bunkhouse. He was an experienced man, "was called at times to do anything," and was subject to call at all times.

Baxter, during the early part of his employment, lived at Oilmont, but about July 20, 1927, his duties as a stillman were increased to include laboratory and repair work. His pay, which had been $5.50 per day, was increased to include board and room, but he was subject to call "at any hour of the day or night to superintend or assist in operations that could not be handled by the men then on duty." When the new arrangement was made respecting his duties, he was directed to live in the bunkhouse, and lived there from about July 20 until the accident occurred.

Dennis is a carpenter. It seems that he had been living at Oilmont, where he owned a house, but, just prior to the time of his employment by the refining company, he had rented the house to another, and was contemplating moving to Shelby, where his wife had secured work. He was employed by Landeen, who told him he could get his meals at the boarding-house. He told Landeen he could not sleep at Shelby if he worked at the refinery, to which Landeen replied: "We expect you, as well as the other men, to sleep on the premises." Dennis moved to the bunkhouse, where he slept until the morning of the accident.

Counsel for defendants stress the testimony of officers of the refining company to the effect that it was not compulsory for their employees to live upon the premises. The fact remains that the injured men lived at the bunkhouse at the company's direction; they were expected to live there. The circumstances indicate that they were required to live there. There was a significant statement from Mr. Coons, secretary of the refining company at and before the time of the accident, and manager also thereafter. In answer to a direct question as to whether the men were required to live at the bunkhouse, he said: "We absolutely did not require a man to do things

he didn't want to do. A man could quit." That this attitude was understood by the employees is reflected by the testimony of Dennis, who said: "I don't know that a man has absolutely to sleep there. If you refuse to do what they want to do, you don't have to go to work."

As before noted, these cases come here upon the record certified by the board. No additional evidence was received. Accordingly, so far as the sufficiency of the evidence is in question, we go no further than to ascertain whether there is any evidence to sustain the findings of the board and the trial court. Unless the evidence clearly preponderates against the findings, it is our duty to sustain them. (*Morgan v. Butte Central M. & M. Co.,* 58 Mont. 633, 194 Pac. 496; *Dosen v. East Butte Copper Min. Co.,* 78 Mont. 579, 254 Pac. 880.)

The Compensation Act does not contemplate that an employer who comes within its provisions shall be the insurer of his employee at all times during the period of the employment. The employer is liable only when the injury occurs to the employee while he is performing some act for the employer in the course of his employment, or is doing something that is incidental thereto. (*Larson v. Industrial Accident Com.,* 193 Cal. 406, 224 Pac. 744.)

In order for claimants to recover, the facts must disclose that the injuries resulted from an industrial accident, arising out of and in the course of their employment. As these terms are used conjunctively, and not disjunctively, in the statute, unless all three necessary elements are proved by a preponderance of the evidence, no liability rests upon the employer to pay compensation. (*Wiggins v. Industrial Accident Board,* 54 Mont. 335, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, 170 Pac. 9; *Wirta v. North Butte Mining Co.,* 64 Mont. 279, 30 A. L. R. 964, 210 Pac. 332.)

The explosion, happening as it did, was an industrial accident. (*Nicholson v. Roundup Coal Min. Co.,* 79 Mont. 358, 257 Pac. 270.) As this court, speaking through Mr. Justice

Matthews, said in the case last cited, the phrase "injury arising out of and in the course of his employment" means that the injury or death resulted from an industrial accident arising out of and in the course of his employment. The terms "arising out of" and "in the course of" are used conjunctively, and, in order to satisfy the statute, both conditions must concur. (*Wirta* v. *North Butte Min. Co., supra; Herberson* v. *Great Falls Coal & Wood Co.*, 83 Mont. 527, 273 Pac. 294.) The term "out of" points to the origin or cause of the accident, and is descriptive of the relation which the injury bears to the employment. (*Wiggins* v. *Industrial Accident Board, supra.*) It presupposes a causal connection between the employment and the injury. (*Larke* v. *John Hancock Mutual L. Ins. Co.*, 90 Conn. 303, L. R. A. 1916E, 584, 97 Atl. 320.) The term "in the course of" refers to the time, place, and circumstances under which the accident took place; an accident arises in the course of the employment if it occurs while the employee is performing the duty which he is employed to perform (*In re McNicol*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, note), or "if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time" (*Bryant* v. *Frissell*, 84 N. J. L. 72, 86 Atl. 458, quoted in *Wirta* v. *North Butte Mining Co., supra*).

It is enough if there be a causal connection between the injury and the business in which the injured person is employed—"a connection substantially contributory, though it need not be the sole or proximate cause." (*Cudahy Packing Co. of Nebraska* v. *Parramore*, 263 U. S. 418, 68 L. Ed. 366, 30 A. L. R. 532, 44 Sup. Ct. Rep. 153; *Herberson* v. *Great Falls Coal & Wood Co., supra.*)

In the cases at bar there is a direct causal connection between the injuries received by the employees and their employment by the defendant refining company. (*State Compensation Insurance Fund* v. *Industrial Accident Commission,*

194 Cal. 28, 227 Pac. 168; *Larson v. Industrial Accident Commission, supra.*) The employees, upon the facts, must be considered to have been performing services growing out of and incidental to their employment. "The general rule appears to be that when the contract of employment contemplates that the employees shall sleep upon the premises of the employer, the employee, under such circumstances, is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer." (1 Schneider's Workmen's Compensation Law, p. 608, par. 279. See, also, *Moyse v. Northern Pac. Ry. Co.*, 41 Mont. 272, 108 Pac. 1062; *Larson v. Industrial Accident Commission, supra; State Compensation Insurance Fund v. Industrial Accident Commission, supra; Pacific Employers' Ins. Co. v. Industrial Accident Commission*, 77 Cal. App. 424, 246 Pac. 825; *Holt Lumber Co. v. Industrial Commission*, 168 Wis. 381, 170 N. W. 366; *Favorite v. Kalamazoo State Hospital*, 238 Mich. 566, 214 N. W. 229; *Novack v. Montgomery Ward & Co.*, 158 Minn. 495, 198 N. W. 290; *Doyle's Case*, 256 Mass. 290, 152 N. E. 340.)

We are well satisfied with the findings of the board and the trial court upon this issue. Both tribunals had in mind the rationale of the Workmen's Compensation Law, which must be administered, within the limitations of the statute, in the interest of the injured workman and his dependents. "To every thinking person the object sought commends itself not only as wise from an economic point of view, but also as eminently just and humane." (*Shea v. North-Butte Mining Co.*, 55 Mont. 522, 179 Pac. 499; *Dosen v. East Butte Copper Mining Co.*, 78 Mont. 579, 254 Pac. 880.)

But the court erred in awarding the claimant Sadie McDonald Olson, widow of John Olson, a lump sum. What is said in the *Landeen Case* is directly applicable. And what is said in that case respecting the sum of $150 on account of burial expenses and interest thereon is also applicable. Likewise with respect to medical, surgical, and hospital services.

The judgments in favor of claimants Baxter and Dennis are affirmed, with costs. The judgments in favor of claimants Landeen and Olson are reversed for further proceedings not inconsistent with this opinion. The defendants shall recover one-third their costs in the Landeen appeal. In the Olson appeal, neither shall recover costs of the other.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN, concur.