COGDILL, Respondent, *v.* AETNA LIFE INSURANCE CO.
ET AL., Appellants.

(No. 6,833.)

(Submitted May 5, 1931.   Decided July 3, 1931.)

[2 Pac. (2d) 292.]

Mr. *W. S. Rynerson* and Messrs. *Clift & Glover,* for Appellant, submitted a brief; *Mr. R. H. Glover* argued the cause orally.

246

*Mr. A. G. Shone,* for Respondent, submitted a brief and argued the cause orally; *Mr. E. G. Toomey,* of Counsel.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Otis Cogdill, while in the employ of the C. & F. Teaming Company, of Butte, was accidentally killed on February 1, 1930. The employer operated under plan 2 with the Aetna Life Insurance Company as insurer.

250

Cogdill left a wife, Myrtle Cogdill, aged thirty-six, and son Curtis, aged ten years, seven months. No question was raised by the insurer as to the right of the beneficiaries to compensation; instead it paid to the widow the maximum rate of $17 per week for a period of 24 weeks from the date of death.

On July 3, 1930, Myrtle Cogdill petitioned the Industrial Accident Board for an advance of $1,000 to enable her to seek medical and surgical attention without the state of Montana. The board notified the insurer of the application, and it indicated that it would not resist a partial conversion, provided it applied only to current payments, but objected if it was proposed to order a payment as of remote compensation.

A hearing was had at which the claimant and insurer introduced testimony which, without conflict, showed that Myrtle Cogdill had been for some years suffering from certain ailments requiring surgical treatment, and, owing to shock and her physical condition, was in a bad state of nerves; that her case was not an unusual one with her sex and could be adequately treated at her home in Butte, but that prior to his death her husband had planned to take her to Portland, Oregon, for treatment and, because of that fact, she desired to go to Portland. Dr. Sievers, of Butte, was of the opinion that a change of altitude and a "vacation" might aid her nervous condition.

On the record made, the board declared that the claimant had been paid compensation for 24 weeks at $17. per week, "leaving due, owing and unpaid 376 weeks at said rate," granted the conversion awarding, in effect, the payment of the final 78 weeks' compensation of the 376 weeks' allowances found due, and continuing the current payments, as theretofore made, for a period of 298 weeks. The insurer moved for a rehearing, which motion was denied, whereupon appeal was taken to the district court of Silver Bow county.

The district court sustained the order of the board, but, finding that the minor child would reach the age of eighteen years, at which age he would cease to be a dependent, 12

weeks before the expiration of the term named, modified the order by deductions which left the sum of $983.90 as "the present worth of the last 78 weeks' compensation of the series of 376 weeks due as aforesaid." The employer and insurer have appealed from the judgment, and here raise the sole question as to the authority under the law to make such an order as was here made.

1. It is first contended that a lump sum settlement cannot be awarded without the consent of the parties and, in this, reliance is placed upon the decisions rendered on the Workmen's Compensation Law of five sister states. Such decisions are persuasive only when it appears that the Acts construed are similar to our own. Examination of the authorities cited discloses a dissimilarity in this regard, rendering the decisions inapplicable here.

Under the provisions of section 2926, Revised Codes 1921, a conversion, in whole or in part, of monthly payments into a lump sum settlement "can only be made upon the written application of the injured workman, his beneficiary, or major or minor dependents, as the case may be, and shall rest in the discretion of the board," etc. Under this Act the board has authority to make such an award regardless of the consent or objection of the employer or insurer, but only on the written application of the person entitled to the monthly payments. (*Landeen* v. *Toole County Ref. Co.*, 85 Mont. 41, 277 Pac. 615; *Sullivan* v. *Anselmo Min. Corp.*, 82 Mont. 543, 268 Pac. 495; *Nicholson* v. *Roundup Coal Co.*, 79 Mont. 358, 257 Pac. 270.)

2. The controlling questions, which may be treated as one, are as to whether or not under the fact conditions shown and under the controlling provisions in this state, the board erred in holding that there was, at the time of the hearing, "due, owing and unpaid" to the dependents $17 per week for the full period of 376 weeks, and whether or not the board exceeded its jurisdiction and authority in awarding, as a partial lump sum settlement, the final 78 weeks' compensation of an assumed 400-week period.

Compensation was paid to Mrs. Cogdill for the support of herself and child, under the provisions of section 2915, Revised Codes 1921, as amended by section 14, Chapter 177, Laws of 1929, which fixes the weekly rate, in case of injury to an employee causing death, on a basis of the number of beneficiaries surviving him, the maximum to be paid to a single beneficiary being $15, to two beneficiaries, $17 "for a period not exceeding four hundred weeks (400) and subject to change, when the number of beneficiaries or dependents decreases. * * * "

After covering all cases in which compensation may be awarded or shall be paid (secs. 2912 to 2924, inclusive), section 2926 provides that "the monthly payments provided for in this Act may be converted, in whole or in part, into a lump sum payment, which * * * shall not exceed the estimated value of the present worth of the deferred payments capitalized at the rate of five per centum per annum. Such conversion * * * shall rest in the discretion of the board, both as to the amount of such lump sum payment and the advisability of such conversion."

The phrase "not exceeding," preceding the number of weeks designated is found also in sections 2912, 2913, and 2914, as amended by Laws 1929, Chapter 177, dealing with partial and total, temporary and permanent, disabilities, but in cases arising under those sections the period is determinable on the basis of the condition of the claimant, while, in the case of compensation payable to the beneficiaries of a deceased workman, the Act expressly declares further conditions as to the length of time over which the weekly compensation shall be spread. Therefore the quoted phrase has a significance, when section 2915, as amended, is construed, as it must be with section 2865, amended by section 4, Chapter 121, Laws of 1925, defining "beneficiaries" as a widow and child, or children, of an employee who died as the result of injury, and section 2892, which declares that, "if any beneficiaries * * * die, or if the widow * * * remarry, the right of such beneficiary or * * * widow * * * to com-

pensation under this act shall cease," which it does not have in the preceding sections.

If the weekly compensation of a widow may be converted ■ into a lump sum payment, in determining what that payment shall be, the board must determine what is "the present worth" of her right to compensation, and must take into consideration the contingencies of death and remarriage, either of which works a cessation of the right.

The "deferred payments," which shall be capitalized as in ■ section 2926 directed, mean such payments as would ordinarily become payable in the natural course of events, taking into consideration the expectancy of the beneficiary. (*H. W. Clark Co.* v. *Industrial Com.*, 291 Ill. 561, 126 N. E. 579.)

A widow has two expectancies—life expectancy and that ■■ of remaining a widow; the right to continued monthly payments will be cut off by the happening of either contingency, death or remarriage. Human experience teaches that, in the case of a young woman left to wage life's battles alone, or, in addition, to support one or more young children, the happening of the first contingency within the coming seven and a fraction years is less probable than the happening of the second, which constitutes a real cause for the expectation that an employer or insurer will not be called upon to pay such a beneficiary compensation for anything like 400 weeks. For this reason it is said that the provision for the termination of installment payments by remarriage is inconsistent with the right of either party to enforce a conversion to a lump sum by a court order over the objection of the other (*American Zinc Co.* v. *Lusk*, 148 Tenn. 220, 255 S. W. 39), and the supreme court of New York has held that provisions similar to those of section 2926 above do not apply to compensation payable to a widow, stating: "It does not contemplate and fails to provide for weighing or determining the contingency of the widow's remarriage—which would bring about a cessation of the payments to her." Justice Pound, dissenting, contended that a widow's payments could be con-

verted into a lump sum by reference to vital statistics to determine the number of widows of a given age who do remarry, as the expectancy of life is determined from mortality tables, and thus, on consideration of the contingencies of death and remarriage, a just lump sum could be determined upon; he called attention to the remarriage table employed by the Dutch Compensation Commission under the law. (*Adams* v. *New York etc. Ry. Co.*, 220 N. Y. 579, 114 N. E. 1046.) Thereafter New York amended her law by providing that commutation might be made in favor of widows upon the basis of the "Survivorship Annuitants' Table of Mortality and the Remarriage Tables of the Dutch Royal Insurance Institution."

On the other hand, Pennsylvania, under provisions similar to ours, has held that a widow's payments are subject to commutation, when due consideration is given to the contingency of remarriage. There a trial court set aside an award, however, because the board did not protect the interest of the insurer by requiring a bond for the return of the overplus in the event of remarriage. (*Murphy* v. *Monongahela Connecting R. Co.*, 30 Pa. Dist. R. 76.) Later a superior court reversed a trial court for requiring a bond, declaring: "This we think would be a matter for the legislature and not for the courts." (*Hall* v. *Jones & L. Steel Co.*, 79 Pa. Super. Ct. 303.) Finally the supreme court of Pennsylvania declared that consideration must be given by the board to the contingency of remarriage "when that question is put in issue"; that, where the board is reasonably certain remarriage is not intended, commutation should be granted without safeguarding the rights of the employer; that it should not be granted where the contrary appears, but "in doubtful cases" the board, in the exercise of sound discretion, "may either refuse or grant commutation conditioned upon some form of indemnity being given to the employer." (*Garrity* v. *Bituco Mfg. Co.*, 277 Pa. 88, 120 Atl. 764.)

We are not here called upon to determine whether or not monthly payments may, in the ordinary case in which a widow

is the beneficiary, be converted to a lump sum payment, and decision on that question is reserved. We cannot, however, subscribe to the Pennsylvania plan for the protection of the employer. Aside from the fact that to read into our Act a provision authorizing the requirement of an indemnity bond would be judicial legislation which might be found contrary to public policy, a widow whose condition requires the conversion of monthly payments into a lump sum could hardly be expected to occupy a station in the financial world such as could command such a bond for the repayment of moneys already spent in the alleviation of her condition.

Even where conversion is sanctioned, if the contingencies of death and remarriage are not given effect in some adequate manner, the award of a lump sum is erroneous and cannot be "as a matter of law" upheld. (*Matecny* v. *Vierling Steel Works,* 187 Ill. App. 448.)

It is clear that, in determining that the amount of $17. per week for a period of 376 weeks was "due, payable and unpaid," the board merely deducted the 24 weeks for which the widow had received payment from the maximum allowed under section 2915, as amended, and did not in any manner give effect to the provisions of the Act respecting remarriage. However, even if the award could be upheld on the theory of an implied finding, in conformity with the Pennsylvania decision, that it is reasonably certain that remarriage is not intended, there are other considerations which must condemn it.

Section 2926 permits a conversion of "monthly payments". "in whole or in part"; the compensation in the instant case is at the rate of $17 per week, and a portion thereof would be some aliquot part of the sum to be paid monthly, and not the whole of the last 78 weeks' compensation.

The following statement from *Gahan* v. *F. S. Payne Co.,* 98 Conn. 233, 118 Atl. 922, 923, is pertinent here: "Since commutation must be of a sum known or existing, because the duration of the period of weekly compensations is fixed, com-

mutation may not be made of weekly compensation which may never exist.''

·It was an easy matter for the trial court to determine that $2.00 per week for the last twelve weeks of the period was improperly allowed, as the minor beneficiary will have reached the age of eighteen years and no longer be a beneficiary under the statute 12 weeks prior to the expiration of the maximum 400 weeks, but who has determined, and who can say, that the widow will not' have married within the next five years?

Under the circumstances the board exceeded its authority in the attempted conversion of the remote weekly compensation if such conversion can ever be made. The declaration in *Woodward Iron Co.* v. *Bradford,* 206 Ala. 447, 90 South. 803, 806, respecting a provision for the allowance of attorneys' fees out of a court award, is pertinent here: ''These words do not authorize the judge to make the employer, in effect, an insurer against the death or remarriage of a * * * widow * * * which would be the result by requiring the employer to pay these fees in advance and look to the last periodical payments for reimbursement.''

A further fact condition in the instant case precludes an affirmance of the judgment, i. e., the existence and rights of the minor child. Under our Compensation Act the surviving widow and surviving children are all ''beneficiaries''; no distinction is made between them (sec. 2865, Rev. Codes 1921, as amended by section 4, Chap. 121, Laws of 1925), and no provision is made for a division between them of the compensation awarded or to which they are entitled, but, ''where decedent leaves one beneficiary,'' the maximum weekly compensation is $15, for two $17, and so on (sec. 2915, Id., as amended by sec. 14, Chap. 177, Laws of 1929).

''The principle involved in the Compensation Acts is that the benefits received are a substitute for the wages of the injured employee, and with this theory in mind the legislatures of all states, except three, have provided for periodical payments. The purpose of this method is to preclude any possibility of an imprudent employee or dependent wasting

the means for support and thereby becoming a burden upon society.

"Fraternal insurance statistics show that more than fifty per cent of the insurance money paid to widows and orphans reaches the hands of swindlers. Our legislatures were, however, mindful of the fact that cases might arise wherein the interests (of all) might be better served by an award of a lump sum." (Schneider, Workmen's Compensation Law, 1296.)

The support of a child through the instrumentality of the wages of the father would never be converted to another purpose, although the father might, by reason of the declining health of the wife, be compelled to raise a lump sum for the payment of doctor, surgeon, and hospital bills; but it is clearly not within the letter or spirit of our law that weekly payments for the support of the child should be diverted to any other purpose.

The board treated the weekly allowances of $17 as due the widow and subject to conversion on her written request, but that amount is due the widow and her son jointly for their support. It is true that for the purpose of saving trouble and expense of guardianship proceedings the law permits the payment of the full amount to the widow, and payment to her "shall acquit the employer, the insurer or board" (sec. 2898, as amended by sec. 8, Chap. 121, Laws of 1925), but an undivided portion thereof belongs absolutely to the child and is dedicated to its support.

In *Lovasz* v. *Carnegie Steel Co.*, 266 Pa. 84, 109 Atl. 601, the court said: "In the award of compensation, children receive first consideration, and, to give full effect to the humane purposes of the Act, their interests must always be carefully guarded. While the compensation payable at stated intervals is given to the widow, this does not vest in her the absolute right to squander the money and deprive the children of the support intended by the law, as the state, acting through one of its designated agencies, will, when called upon, see that the fund is properly applied. * * * The Act gives to the children such an interest in the compensation as can be laid

hold of by the courts, and its ultimate disposition controlled; particularly is this so when such compensation assumes the shape of a commuted payment.''

It is the duty of the board and of the courts so to administer the Compensation Act as to insure the support of children entitled thereto under the Act. In this case, if the widow die or remarry at any time before the boy reaches the age of eighteen years, the boy would be entitled to receive $15 per week for the remaining portion of the period; if she lives and remains single, he is still entitled to support out of the joint weekly payments required by the law. If, therefore, the total amount of the final 78 weeks' payments to be made to the widow, for 66 of which the boy is entitled to compensation, the board and the courts will have, in the event of the remarriage of the widow, deprived a child under their care and protection of support for a period of a year and a quarter.

While the right of the widow to receive the advance requested is not contested, the record does not disclose such urgent need for that amount as to render the reversal of the judgment a calamity to the applicant. It is clear that she can obtain as adequate surgical attention, in view of her ailment, in her home city of Butte as she would in Portland and at a fraction of the cost to the meager fund to which she and her child are entitled for their support.

For the reasons stated the judgment is reversed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and FORD concur.

MR. JUSTICE ANGSTMAN: I agree with the result announced in the foregoing opinion, but not with all that is said in it.

Rehearing denied September 9, 1931.