# McKINNEY v. MANNING & MARTIN, INC.

(No. 2157; March 5, 1940; 99 Pac. (2d) 922)

For the appellant, there was a brief by *John B. Barnes, Jr.* of Lusk, Wyoming, and *Richard I. Drahn* of Denver, Colorado, and oral argument by *Mr. Drahn.*

For the respondent, the cause was submitted upon the brief of *Thomas O. Miller* of Lusk.

*John B. Barnes, Jr.* and *Richard I. Drahn* in reply.

KIMBALL, Justice.

In a proceeding under the Workmen's Compensation Law, the employer appeals from an order awarding the workman $1625 as compensation "for permanent partial disability of sixty-five per cent. of the loss of the use of the left leg and the whole thereof," and directing that one-half of the amount be paid in a lump sum. The question is whether the evidence was sufficient to support the finding as to the extent of the disability and the order as to the manner of payment.

By section 124-120, R. S. 1931, as amended by section 7, chapter 128, Session Laws of 1937, it is provided:

"Permanent partial disability means the loss of either one foot, one leg, one hand, one arm, one eye, or the sight of one eye, one or more fingers, one or more toes, and dislocation where ligaments are severed, or any other injury known to surgery to be permanent partial disability. For any permanent partial disability hereinafter specifically described, resulting from an injury, the workman shall receive an award as follows:"

The specifically described disabilities are then listed with the amounts to be received therefor. Included are these: "For loss of a foot, $1500; for loss of a leg below the knee, $1800; for loss of a leg above the knee, $2500."

It is then provided: "For any other injury known to surgery to be permanent partial disability, the workman shall receive a sum in the amount proportional to the extent of such permanent partial disability based as near as may be upon the foregoing schedule."

The workman was injured April 17, 1938, while em-

ployed as a welder in the Lance Creek oil field where the employer, a drilling contractor, was drilling oil wells. He was working on a piece of pipe which rolled from a rack striking and crushing his left leg between the knee and ankle, fracturing the lower ends of the tibia and fibula. The fracture was serious, and the workman was under the care of a skilled orthopedic surgeon for eight months. The treatment produced a good result, but the workman was still using crutches in moving about on December 19, 1938, when he went to Laramie, Wyoming, and resumed work that he was able to do while sitting.

There was evidence that the workman's left knee had been injured three times. In 1930, the knee cap was broken causing disability for about 15 weeks. In March, 1939, while working at Laramie "the left leg in the knee or about the knee" was wrenched causing pain and swelling, but the workman did not stop work or see a physician. In the latter part of May, 1939, after the workman had been transferred from Laramie to his old job in the Lance Creek field, the knee was injured again and rather seriously during an altercation with a fellow-workman. This injury put the workman on crutches again and out of work for a month or more. Treatment was by adhesive plaster strapping of the knee, and later by an elastic bandage which he was still wearing at the time of trial, August, 1939. This injury was causing some partial disability at the time of the trial, but the extent and permanency of disability from this cause, was not taken into consideration in fixing the amount of compensation. The order of award recites: "that a portion of the injury, at least to the knee, did not occur while employee was working for the employer within the scope of his employment and that portion of the injury is not considered by the court in making this award." The award, therefore, was for permanent loss of 65 per cent. of the use of the

left leg caused by the injury in the accident of April, 1938, with no allowance for disability caused by injuries to the knee in other accidents.

When the workman was able to resume work after the last injury to his knee, he was informed that he was discharged, but he soon found another job where he does the same kind of work for about the same pay as before.

We are unable to find substantial evidence to justify a finding that the workman has lost 65% of the use of his leg as a result of the injury in April, 1938. The principal loss of use is in and near the ankle where there is some stiffness, weakness and edema. Mobility in the joint is twenty per cent. of normal. The workman walks without aid of crutch or cane, but with a limp caused partly by the stiff ankle and partly by the bad knee. He testified that the left leg was "very weak and clumsy and hard for me to get around on"; that he was able to do the same type of work he did before the injury, but not able to do it "as handily or as efficiently," because of difficulty in changing his position to meet the demands of his work. The leg above the knee causes no trouble, but the whole leg is weaker, and, except where swollen, smaller, than the other, because of atrophy that naturally followed treatment and disuse. At times there is pain "in the knee and below, * * * wherever the strain comes." The weak leg renders the workman less able to avoid injury in possible future accidents, and lessens his chances of obtaining work for employers who may be particular about the physical condition of their workmen. The knee injuries have contributed to the general weakness of the leg, and it is not possible to find any basis for separating the percentage disability to the whole leg caused by the injury of April, 1938, from that caused by the injuries to the knee, except in the opinions of the surgeons. The opinion on that subject most favor-

able to the workman, as given by the surgeon who testified in his behalf, was that "he has an actual thirty-three and one-third per cent. disability of the entire limb." The employer says that this opinion took into consideration non-compensable injuries to the knee, but we do not think the trial court was bound so to understand it. The witness had testified that the injury of April, 1938, and the keeping of the leg in a cast for a long time during healing, had weakened the whole leg. He testified that in estimating the disability: "I am figuring the entire limb, basing my estimation on the joint below the knee, and the damage done to the leg." We think the evidence, including this opinion, was sufficient to support a finding of permanent loss of one-third of the use of the leg, and an award of $833.33, one-third of the amount allowed by statute for the loss of a leg above the knee. This seems to us the largest award that can be sustained by evidence most favorable to the workman.

The statute declares that in every case of permanent partial disability the amount allowed for the injury shall be paid in monthly installments, but it is provided that the court shall retain jurisdiction of the case with power, among other things, "upon application and hearing, with notice to the employer, and upon a showing of exceptional necessity therefor, to order all or any part of the unpaid balance of the award to be paid to the injured workman as a lump sum." § 124-120, R. S. 1931, as amended § 7, ch. 128, Sess. Laws 1937. The act as originally passed, and for several years thereafter, provided for lump sum payments in all cases of permanent disability. Wyo. C. S. 1920, § 4334. An amendment of 1927 made the amount allowed payable in monthly installments, except upon a showing of "necessity" for the payment of a lump sum. Sess. Laws, 1927, § 5, ch. 111. The amendment of 1937 inserted the word "exceptional" before the word "ne-

cessity." These amendments make lump sum payments the exception rather than the rule, in conformity with the view that generally the interest of the disabled workman and his dependents will be best served by paying the compensation as wages are paid. See Landeen v. Toole County Refining Co., 85 Mont. 41, 277 Pac. 615; Bacon v. United Electric R. Co., 51 R. I. 84, 150 Atl. 818, 69 A. L. R. 544, and note; Illinois Zinc Co. v. Industrial Co., 355 Ill. 253, 189 N. E. 310; Adams v. New York O. & W. Ry. Co., 175 App. Div. 714, 161 N. Y. Supp. 919. We should not undertake to lay down any set of rules to apply in determining whether an "exceptional necessity" is shown. The matter is largely within the discretion of the judge who should consider the immediate and future needs of the workman and dependents, how and with what benefit the money will be used, and whether there are exceptional circumstances to justify a departure from the monthly payment plan. In some cases it will be necessary to consider also whether a lump sum payment is likely to work injustice by making it impossible effectively to modify or change the award to conform to future change in the condition of the injured workman. See Standard Oil Co. v. Sullivan, 33 Wyo. 223, 237 P. 253. The decision of the trial judge as to the manner of payment should not be disturbed on appeal except for abuse of discretion.

The workman testified that he wanted a lump sum to use in buying a welding outfit to establish a small shop of his own. He believed he could earn a steadier income by doing shop work than by working for wages. He thought he had been lucky in obtaining the job he was holding at the time of trial, and feared that if he lost it his physical condition might prevent him from obtaining another. Shop work would consist mostly of smaller jobs which would not require much changing of position, and would enable him to give his weak leg

better protection than he could give it in field work. On jobs which he figured he could not do alone, he could employ someone to help for a few days. There was no evidence to show that the workman had had experience in conducting a welding shop, and he failed to state the basis for his belief that the business would be financial profitable. Where and when the shop would be set up, and the amount of the required investment, were not stated.

The workman's leg was disabled by four injuries, three of which were serious. The trial judge may have thought that in continuing at field work the workman was in constant danger of further injury and of losing his job. We should not hold that the judge was not justified in finding that there were exceptional circumstances making it necessary that the workman engage in lighter work. Whether the necessity continues and whether a lump sum payment will accomplish the desired end, must be decided on facts that may be more fully disclosed at a future hearing.

We shall order that if the workman, within twenty days after the filing of the mandate in the trial court, shall consent to have the award reduced to $833.33 by filing a proper statement to that effect in said court, the order of award as so reduced will stand affirmed; otherwise it will be reversed and a new trial had. If the workman does not consent to accept the reduced amount, there will be a new trial of all issues. If he does consent, and does not withdraw his application for a lump sum payment, the further hearing will be for the sole purpose of determining the manner of payment.

The case will be remanded for further proceedings consistent with this opinion.

RINER, Ch. J., and BLUME, J., concur.