No. 80-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

DAWN M. HOCK,

Claimant and Respondent,

vs.

LIENCO CEDAR PRODUCTS, Employer,
and STATE COMPENSATION INSURANCE FUND,

Defendant and Appellant.

_____

Appeal from:   Workers' Compensation Court
               Honorable William E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Roy Andes, Assistant Attorney General, argued, Helena,
         Montana
        J. David Slovak argued, Helena, Montana

    For Respondent:

        Hoyt and Trieweiler, Whitefish, Montana
        Terry N. Trieweiler argued, Whitefish, Montana

_____

                    Submitted:  June 12, 1981

                      Decided:  September 28, 1981

Filed:  **SEP 29 1981**

_____
                            Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant State Compensation Insurance Fund appeals from the order of the Workers' Compensation Court granting claimant Dawn Hock's petition for a lump sum award of benefits.

The Fund presents the following issues:

1. In disposing of or prejudicing the future interests of the surviving infant beneficiary, should the court have made the child a party and appointed a guardian ad litem?

2. Is it proper for the Workers' Compensation Court to entertain a petition for a $19,000 lump sum, where a $6,000 claim was presented to the division?

3. Does a lump sum award of benefits in the amount of $19,622.72 constitute an abuse of discretion in light of evidence of expenses aggregating only $14,039.25?

4. Does the failure to file an attorney fee agreement prior to trial forfeit the right to collect attorney fees?

We affirm the award of the Workers' Compensation Court, but with some instructions to be followed in similar cases in the future.

Dawn Hock is eighteen years old, and has a two-year-old child. She is not employed, having completed only the tenth grade and having no prospects of employment. She presently draws $186.68 per week in workers' compensation payments by reason of the death of her husband, Warren, which occurred on May 23, 1980, while he was working for defendant/employer, Lienco Cedar Products (his gross salary was $279 per week). She also draws social security benefits, giving her a monthly, tax-free income of more than $1,100.

The employer was insured under compensation plan no. 3, by defendant State Compensation Insurance Fund. Under the statutes, Dawn is entitled to receive biweekly payments for

the rest of her life; however, if she ever remarries, then she will receive a final, single payment equal to two-years' benefits, and compensation will then be stopped. Section 39-71-721, MCA.

Dawn's daughter, Dusty Rae, is also a beneficiary under the workers' compensation statutes. Section 39-71-116(2), MCA. All payments are presently made to Dawn alone, but if she should die or remarry, then the child will receive the same amount of benefits until age 18, or age 25 if a full-time student. In considering the lump sum award to Dawn, we must determine the extent to which the child's contingent future rights are to be protected.

Dawn initially requested a $6,000 advance on her benefits from the Division of Workers' Compensation. She alleged certain debts were causing hardship for her and the child. The claims supervisor tentatively agreed to the advance, upon the condition that the $6,000 to be advanced be deducted from the payment Dawn would receive in the event she remarries. When the claims supervisor submitted the plan for approval to the division administrator, it was rejected. The administrator required "positive protection of recovery" of the advance, citing the possibility that should Dawn never remarry, then the advance would never be recovered. The Fund offered another plan, which proposed to deduct $25 per week from Dawn's benefits until full recovery or remarriage. The new plan was rejected by Dawn's attorney.

Dawn petitioned the Workers' Compensation Court for an emergency hearing on the lump sum dispute. In her petition, she asked, for the first time, for an advance of $19,622.72, which amount is equal to the two-years' worth of benefits she would receive in a single payment upon remarriage. The Fund moved to strike the $19,000 figure and insert the

-3-

original $6,000 figure, on the ground that the larger sum had never been presented to the division and so was not a "dispute" the court could hear, citing section 39-71-2905, MCA. The Fund paid the $6,000 sum to the clerk of the court, and filed an offer of judgment which sets forth the Fund's second proposal for recovery of the advance. The motion to strike was never ruled upon by the court.

In its trial brief and in the pretrial order, the Fund raised the issue of possible prejudice to the child's contingent future right to receive benefits. The Fund asked the court to join the child as a party and to appoint a guardian ad litem to protect the child's interests in regard to any scheme to recover a lump sum advance. The court did neither.

At trial, Dawn testified to the following debts which total slightly over $14,000:

1. New Mobile Home  $6,500
2. Automobile  $4,900
3. Funeral Expenses  $806
4. Taxes  $43.75
5. Utility Installation  $433
6. Balance Due on Old Mobile Home  $780
7. Gambles Account  $50
8. Medical Bills  approximately $500.

With regard to these debts, Dawn testified that her old mobile home was in need of substantial repair, necessitating the purchase of a new one. In a similar manner, she testified that she had no usable automobile and had arranged to purchase a satisfactory used 1978 Plymouth. Dawn testified that she had no medical insurance coverage for herself or her daughter. The child is susceptible to convulsions.

Dawn also testified that she and her child can live on her $1,100 per month tax-free income, if her debts are paid.

The only other witness at trial was the claims supervisor for the division. He testified the division acted in good faith throughout the negotiations to protect the interest of the child and the Fund from overpayment. He also stated that no attorney fee agreement had ever been filed with the division by Dawn's attorney as required by statute, thus laying the foundation upon which the Fund argues that Dawn is not entitled to receive attorney fees. He stated that no claim for $19,000 had ever been made to the division, only a claim for $6,000, but that the $19,000 claim would have been denied in any event because the point of dispute concerned not the amount of advance but the method of recovering it.

The Workers' Compensation Court pointed out that lump sum payments are more desirable than formerly was the case. The court ordered that 104 weeks of claimant's future weekly benefits be converted into a lump sum of $19,622.72. The order provided that the Fund can recover the amount of this lump sum benefit by terminating payment of biweekly benefits to the claimant on the sixteenth birthday of claimant's child, until an amount equal to the advance provided for has been recovered. The order also provided that the claimant's attorney is entitled to attorney fees and provided that the court would take under consideration the question of whether the defendant is responsible for the fees and costs.

A fee agreement (1/3 of award) was filed with the division subsequent to the hearing, but was objected to as not timely.

Dawn's attorney subsequently offered to stipulate to a change in the method of recovery ordered by the court. The

stipulation would have called for recovery of the advance out of Dawn's remarriage benefits or, if she did not remarry, out of her weekly benefits after the child ceased to be a beneficiary. The Fund did not choose to consider this stipulation, preferring to proceed with the appeal.

I.

There can be no question that an infant child of a widow who draws compensation benefits has a separate interest therein. Section 39-71-116(2), MCA, defines "Beneficiary" as including (a) a surviving spouse, and (b) an unmarried child under 18, or under 25 if a full-time student. Section 39-71-723, MCA, provides that compensation due to beneficiaries shall be paid to the surviving spouse. This Court, in interpreting the predecessor of the above section, has stated: "It is true that for the purpose of saving trouble and expense of guardianship proceedings the law permits the payment of the full amount to the widow . . . but an undivided portion thereof belongs absolutely to the child and is dedicated to its support." Cogdill v. Aetna Life Ins. Co. (1931), 90 Mont. 244, 257, 2 P.2d 292, 296. The court went on to hold that children receive first consideration under the act, that their interests must always be carefully guarded, and that "[t]he act gives to the children such an interest in the compensation as can be laid hold of by the courts, and its ultimate disposition controlled; particularly is this so when such compensation assumes the shape of a commuted payment." (Citation omitted.) Cogdill v. Aetna Life Ins. Co., supra. The Workers' Compensation statutes have undergone substantial amendment since 1931, but the above quoted principles still apply because children are still named as separate beneficiaries and payments are still made only to the surviving parent.

-6-

The court's order could result in a substantial reduction in benefits to the child because of the termination of payment of benefits at the time the child reaches sixteen years of age. This requires that the court consider the benefit to the child of the present lump sum settlement as compared to the prospective loss of benefits. There is the real possibility that the child's interest may conflict with the mother's at that point, and that a guardian ad litem would be required to protect the child's interest.

The parties agree that Rule 17(c), M.R.Civ.P., is the only present authority in Montana for appointment of a guardian ad litem. The rules of civil procedure are not directly applicable to the Workers' Compensation Court, because the court is expressly made subject to the provisions of the Montana Administrative Procedure Act (section 39-71-2903, MCA) and MAPA allows each agency to promulgate its own rules.

Federal Rule 17(c) is substantially the same as Montana Rule 17(c). The federal rule has been interpreted as being discretionary, granting to the federal district court the power to choose whether or not to appoint a guardian ad litem, but the courts must find that the interests of the minor are adequately protected. M.S. v. Wermers (8th Cir. 1977), 557 F.2d 170, 174.

This court has adopted a similar discretionary approach to appointment of independent counsel in divorce/custody cases. "[T]he court shall appoint independent counsel for the child [where custody is in serious dispute] or make a finding stating the reasons that such appointment was unnecessary." (Citation omitted.) Matter of Guardianship of Gullette (1977), 173 Mont. 132, 140, 566 P.2d 396, 400. See also In re Marriage of Bartmess (1981), ___Mont. ___, 631 P.2d 299, 300, 38 St.Rep. 1097, 1098.

The Workers' Compensation Court should have appointed a guardian ad litem or made a finding stating the reasons why an appointment was unnecessary; but because of the facts contained in the record in this case, we find that the failure to appoint a guardian ad litem does not constitute reversible error. In this case there was a mutual benefit to the child and the mother in the payment of the described debts. In addition, because of the change of the method of repayment as set forth in this opinion, there is a very limited probability of financial loss to the child. We, therefore, hold that the failure to appoint a guardian was not reversible error.

However, we admonish the Workers' Compensation Court that in future cases, where a child's interest may be effected by any lump sum award, the court shall appoint a guardian ad litem for the child or make a finding stating the reasons that such appointment is unnecessary.

## II.

The Fund argues that no claim for any amount over $6,000 should have been heard by the Workers' Compensation Court, because only the $6,000 claim was ever presented to the division. The Fund argues (1) there is no established "dispute" as to the excess money that could give jurisdiction to the court under section 39-71-2905, MCA, and (2) the court hearing constitutes an appeal from an agency, requiring a claimant to raise all issues before the agency, to exhaust the administrative remedies, before he can be heard in court.

The claims supervisor testified that the "dispute" did not concern the amount of the advance as much as the method to be used for recovery. He stated that the $19,000 claim would certainly have been denied if presented. Therefore, a dispute as to method of repayment did exist; also, because

"[t]he law neither does nor requires idle acts", section 1-3-223, MCA, Dawn should not now be required to go back to the division and begin again only to have the same issues arise.

Dawn has not failed to exhaust her administrative remedies in any event. The Workers' Compensation Court is not a full-blown District Court acting in review of an agency decision. It is an administrative law court, having limited jurisdiction to decide disputes relating to benefits in a de novo proceeding. See State ex rel. Uninsured Employer's Fund v. Hunt (1981), ___Mont. ___, 625 P.2d 539, 542, 38 St.Rep. 421, 424-425. It should be sufficient to present issues at any time before the division or the Workers' Compensation Court in order to obtain review by this Court. Such an approach is supported by section 39-71-2903, MCA, which subjects the Workers' Compensation Court to the provisions of MAPA. The Fund's cited authority for requiring prior presentation to the division is not persuasive. Its principal case was handed down before the Workers' Compensation Court was established. At the time of that case, the division conducted its own contested case hearings like all other agencies. The issues there were not even presented at the hearing. DeLeary v. Anaconda Aluminum Co. (1975), 168 Mont. 208, 541 P.2d 788.

By claimant's raising of all issues in her original petition before the Workers' Compensation Court, the Fund was afforded adequate notice and opportunity to defend. The Fund fears a waste of judicial resources if a resolvable controversy is not first presented to the division, but here, by the division's own admissions, no resolution could have been had. Allowing claimant to present issues raised for the first time at the hearing is in keeping with section

39-71-104, MCA: the act should be liberally construed to effectuate its purposes.

### III.

Dawn established debts of $14,039 at trial. The court awarded her a $19,622 lump sum advance.

Lump sum settlements are granted in exceptional circumstances. Outstanding indebtedness, pressing need, or circumstances in which the best interests of the claimant, his family and the general public are served justify such a settlement. Willoughby v. Arthur G. McKee & Co. (1980), ___ Mont.___, 609 P.2d 700, 702, 37 St.Rep. 620, 623; Kuehn v. National Farmers Union Property & Cas. Co. (1974), 164 Mont. 303, 307, 521 P.2d 921, 924. The decision to award or deny a lump sum settlement will not be interfered with on appeal unless there has been an abuse of discretion. The Workers' Compensation Court will be presumed correct and affirmed if supported by substantial evidence, and reversed only if the evidence clearly preponderates against its findings. Willoughby, 609 P.2d at 702. Wide discretion will be afforded the Workers' Compensation Court in its determinations. Willoughby, 609 P.2d at 704; Kuehn, 521 P.2d at 923.

In determining whether or not there is subtantial evidence to support the Workers' Compensation Court's findings and conclusions, the Supreme Court is required to look to all of the evidence properly before the lower court. Hume v. St. Regis Paper Co. (1980), ___Mont.___, 608 P.2d 1063, 1066, 37 St.Rep. 378, 382.

Evidence before the court showed existing debts for the purchase and maintenance of a home, living expenses, medical expenses, potential future medical expenses for the child, and the need for a fuel efficient car, in all of which the mutual

-10-

interests of Dawn and her child are intertwined.  In addition, we have the possibility of attorney fees being taken out of the award pursuant to the fee agreement.

Considering all such factors, we find no abuse of discretion by the court and affirm the award.

IV.

The Fund argues that Dawn's attorney failed to file his fee agreement prior to the hearing, so has forfeited any claim for attorney fees.

No statute or division rule prescribes the time for filing fee agreements.  Section 39-71-613, MCA, and Rule 24.29.3801, ARM, set maximum amounts of fees and simply require such filing. In the absence of any specified time, and in view of the court's call for a hearing on fees, the division's asserted desire to regulate fees and to protect the workman are not prevented.  No rule has been violated under section 39-71-613(3), MCA, justifying forfeiture.  The division and/or the court can certainly adopt their own rules as to time of filing if the question is as important as claimed.

V.

Claimant urges the award of attorney fees in connection with this appeal.

When an appeal is entirely unfounded and causes delay, respondent is entitled to reasonable costs and attorney fees under Rule 32, M.R.App.Civ.P.  Carbon County v. Schwend (1979), ___Mont.___, ___, 594 P.2d 1121, 1127, 36 St.Rep. 917, 924-925.

We find that the Fund in good faith raised significant issues on appeal. We, therefore, do not award attorney fees for the appellate proceedings.

VI.

We remand the case to the Workers' Compensation Court for the following action:

(1) Modification of the order awarding lump sum advance to provide that recovery of the amount of the advance shall be repayable out of the advance to Dawn in the event of her remarriage, or if she does not remarry, out of her biweekly benefits received after her child ceases to be a beneficiary, or in the event that the claimant dies, that recovery be made out of the child's benefits commencing at her sixteenth birthday; all as agreed to by claimant.

(2) Determination by the court of the amount of the attorney fees to be awarded to claimant's attorney and the party responsible for the payment of such fees and other costs.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-12-