M. P. LEGOWIK, Claimant and Respondent, *v.* MONTGOMERY WARD & COMPANY, Inc., of Illinois, Employer, Defendant and Appellant.

No. 11967.
Submitted April 13, 1971.
Decided June 30, 1971.
486 P.2d 867.

Alexander, Kuenning & Hall, Edward C. Alexander, Great Falls, Neil Ugrin, Great Falls (argued), for appellant.

Hoyt & Bottomly, Great Falls, Richard V. Bottomly, Great Falls, (argued), for respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Eighth Judicial District, County of Cascade, affirming a decision of the Industrial Accident Board. The appeal is limited to the lump-sum payment of the award and does not contest the Board's determination that claimant was and is totally and permanently disabled.

Claimant Matthew P. Legowik was a thirty year employee of Montgomery Ward & Co., Inc., an Illinois corporation, defendant herein. Montgomery Ward is a self-insurer under Plan I of the Workmen's Compensation Act. Claimant's initial injury occurred during the course of his employment on August 16, 1967, when a heavy boat loaded on a trailer suddenly dropped while he was holding the trailer tongue. The result was a downward jolt to claimant's shoulders.

Claimant's injury was diagnosed October 13, 1967, as capsulitis of the right shoulder which is an inflammatory reaction of the capsule of the joint. The injury was one which ordinarily should have cleared up within two or three months. Dr. John Layne, of the Great Falls Clinic, the attending physician, diagnosed this condition but by the first part of November 1967, claimant continued to have appreciable stiffness in both arms and the diagnosis was changed from acute capsulitis to adhesive capsulitis. In adhesive capsulitis there is greater limitation of motion and more pain, and it indicates a more severe inflammatory reaction. By January 1968, claimant's shoulders were markedly limited in motion and the term "shoulder-hand syndrome" was applied. He had lost motion in most fingers of both hands and both hands were swollen and puffy.

Throughout 1968 and 1969, claimant was seen by his physician Dr. Layne, by Dr. Forbeck, Dr. Bloemendale, and Dr. Thomas Powers, all of Great Falls, and by doctors at the Mayo Clinic, all highly respected specialists. These medical men examined claimant for both parties in this action, and their reports and testimony firmly established that claimant's condition has markedly deteriorated due to psychosomatic trauma brought on by nervousness, depression, and underlying emotional problems. The evidence produces no indication of malingering being involved.

Claimant believes he was unjustly treated by his employer of thirty years after an on the job accident. There was considerable confusion in regard to this claim of claimant. He received sick pay and vacation pay from Montgomery Ward following the accident, but an employer's first report of injury was not filed until October 23, 1967. There was also a disability insurance payment under a policy carried by Montgomery Ward to which Legowik had contributed. When claimant was placed on compensation the amount was in error, and upon the suggestion of Dr. Layne that claimant return to part-time employment, Montgomery Ward refused unless a complete medical release was furnished. During this time Legowik was demoted from his job as service department manager. Also at this time, the bill from the Mayo Clinic fell into an area of misunderstanding and was not paid. Litigation followed.

Proceedings were instituted before the Industrial Accident Board to determine the extent of the disability of claimant; to request his bimonthly payments be made in one lump sum; and, to determine the amount of medical payment to be made to adjust the controversy over the Mayo Clinic medical bill and others. A hearing was had at Great Falls on February 13, 1970. The findings resulting from that hearing pertinent to this action were: that Mr. Legowik was permanently and totally disabled; that a reasonable showing of need had been made for commutation of the award to a lump sum; and, that it was to the best

interest of claimant to convert the balance of his scheduled bi-monthly payments to a lump-sum award.

The Board's order was entered April 6, 1970. Montgomery Ward petitioned the Board for rehearing which was denied by the Board on May 18, 1970. Montgomery Ward then filed a partial appeal to the district court from the Board's order denying a rehearing, insofar as the orders concerned the payment of the award in a "lump sum."

The district court permitted additional testimony one Dr. George Gelernter, a psychiatrist, offered by the claimant. No other testimony was offered or taken.

The district court on September 8, 1970, found there was sufficient credible evidence before the Industrial Accident Board to demonstrate a reasonable basis for a lump-sum payment; that the additional testimony of the psychiatrist in district court substantiated the already sufficient showing of need and necessity for commutation of the award to a lump-sum payment; and, affirmed the findings of fact, conclusions of law, and order of the Industrial Accident Board. From this judgment the employer, Montgomery Ward, appeals.

Only one issue is presented for review: Is there substantial credible evidence in this case to support a lump-sum award of workmen's compensation?

The statute that authorizes lump-sum payments in section 92-715, R.C.M.1947; it provides in pertinent part:

"The biweekly payments provided for in this act may be converted, in whole or in part, into a lump-sum payment  *  *  *. Such conversion  *  *  * shall rest in the discretion of the board, both as to the amount of such lump-sum payment and the advisability of such conversion."

As to the discretion of the Industrial Accident Board in awarding lump-sum payments, this Court in Williams v. Industrial Accident Board, 109 Mont. 235, 240, 97 P.2d 1115, stated:

"Wide discretion is vested in this board. A very high degree of good faith, impartiality, and fairness should be shown by the board in dealing with each applicant  *  *  *."

Also in *Williams,* this Court citing from Landeen v. Toole County Refining Co., 85 Mont. 41, 277 P. 615, said:

" 'The determination of this question requires the exercise of a sound discretion. The board is more favorably situated than is the court to familiarize itself with the circumstances surrounding the applicant, to consider his needs, and the results which probably will follow action granting or denying the application; the power "must be exercised in conformity with the spirit of the law and so as to best promote the ends of justice." ' "

In reviewing workmen's compensation claims which have been heard on appeal by the district court, this Court in Breen v. Ind. Acc. Board, 150 Mont. 463, 468, 436 P.2d 701, 704, stated:

"At the outset it must be noted that the scope of review by the Supreme Court upon this appeal is confined to a determination of whether there is substantial evidence to support the findings of the district court (McKinzie v. Sandon, 141 Mont. 540, 380 P.2d 580; Newman v. Kamp, 140 Mont. 487, 374 P.2d 100 * * *). Such findings and conclusions are clothed with the presumption of correctness (Section 93-1301-7, subds. 15 and 33, R.C.M.1947; Friedt v. Industrial Accident Board, 136 Mont. 141, 345 P.2d 377; Laukaitis v. Sisters of Charity, 135 Mont. 469, 342 P.2d 752 * * *), and will not be reversed on appeal unless the evidence preponderates against them (Morgan v. Industrial Accident Board, 133 Mont. 254, 321 P.2d 232 * * *), even though conflicts in the evidence exist * * *."

The employer relies on the cases of Laukaitis v. Sisters of Charity, 135 Mont. 469, 342 P.2d 752 and Malmedal v. Ind. Acc. Bd., 135 Mont. 554, 342 P.2d 745, as principal authority to demonstrate that the monthly payment plan is the rule and the lump-sum payment the exception. Further, that the claimant sustains the burden and any plan presented for *betterment* and *rehabilitation* should demonstrate some reasonable basis for successful fulfillment of the plan. This is good law and easily harmonized with the fact situation in the instant case. But, *Laukaitis* and *Malmedal* also held:

"* * * there should be no hesitancy in permitting such departure where the *best interests* of the parties demand it." (Emphasis supplied.)

It must be recognized that the instant case is not the usual one in terms of a rehabilitation plan in an economic sense; but rather is in the nature of a medical therapeutic sense as shown by the evidence which is sufficient to warrant awarding a lump-sum payment *Laukaitis* and *Malmedal* concern buying a house to raise a garden; hiring a nurse to care for an aged parent characterized as an "insufferable burden" to her children. In both cases the plan for betterment or rehabilitation was not acceptable to the Industrial Accident Board. The Board did not authorize lump-sum payment in either case and its judgment was sustained.

Here, all of the medical authority speaks very firmly that claimant must be relieved of his uncertainty in regard to this litigation and the economic problems it presents, with the underlying principle that he be completely divorced from the circumstances that have produced the psychosomatic illness. Once this is achieved, then and only then, the doctors feel that they will be able to reach their patient and institute rehabilitation therapy. They have also established that time is of the essence, and had this been accomplished sooner the probability of success would be greater. Dr. Layne in written reports to the Board and in his testimony before the Board, endorsed the lump-sum payment principle as a device which he knew would terminate claimant's association with the case, which has induced his degenerated condition, and would produce the "final resolution" the doctors feel is necessary for recovery.

This, in itself, is a plan in the best interest of the claimant for his betterment and rehabilitation. On cross-examination Dr. Layne when asked to compare the relative merits between lump-sum and bimonthly payments in terms of final resolution of this association, was straightforward and candid. He testified that he had not considered the matter in this light before being asked and felt he was not qualified to testify concerning the differ-

ence,further, that he had not discussed it with his patient. Yet, he still felt certain that lump-sum payment had the known advantage of a complete separation. The record is clear concerning the difficulties between the Plan I carrier and claimant as it concerns this claim.

The employer argues this reduces the record to no plan for betterment or rehabilitation that demonstrates a reasonable basis for successful fulfillment. We cannot agree with this reasoning. There was sufficient credible evidence in the record before the Board for it to conclude as it did that the best interest of the claimant would be served by the award it made.

As heretofore noted, the Board has wide discretion and is more favorably situated to make these determinations and its findings come to this Court clothed with a presumption of correctness. We will review only the evidence to determine its sufficiency.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, HASWELL, and CASTLES, concur.