No. 87-242

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

———————————————

TERI PHELPS,

Claimant-Appellant,

-vs-

HILLHAVEN CORPORATION,

Defendant-Respondent.

———————————————

APPEAL FROM:   Workers' Compensation Court,
               The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

               Robert C. Kelleher, Sr.; Kelleher Law Office,
               Billings, Montana

        For Respondent:

               William J. Mattix; Crowley, Haughy, Hanson, Toole
               and Dietrich, Billings, Montana

———————————————

Submitted on Briefs: February 25, 1988

Decided:  March 24, 1988

Filed:   MAR 2 5 1988

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Teri Phelps appeals from a decision of the Workers' Compensation Court awarding Ms. Phelps permanent partial disability benefits of $25.07 per week for 500 weeks, and refusing her requests for partial lump sum conversion and reasonable costs and attorney fees. We affirm.

Ms. Phelps presents the following issues on appeal:

1. Were the findings of the Workers' Compensation Court pertaining to Ms. Phelps diminution of earning capacity supported by substantial credible evidence?

2. Did the Workers' Compensation Court err in excluding the value of fringe benefits when determining Ms. Phelps' wages for the purpose of calculating her entitlement to benefits for permanent partial disability?

3. Did the Workers' Compensation Court abuse its discretion in refusing to grant Ms. Phelps a lump sum conversion of her future entitlement to permanent partial disability benefits?

4. Did the Workers' Compensation Court err in failing to grant Ms. Phelps an award of costs and attorney fees incurred in the Workers' Compensation and in this Court?

On August 26, 1983, Teri Phelps sustained an industrial injury arising out of and in the course of her employment as a nurses aide at the Livingston Convalescent Center (Hillhaven Corporation). The defendant Hillhaven Corporation was enrolled under plan II of the Workers' Compensation Act with Ranger Insurance Co. being its insurer. The defendant accepted liability for wage and medical benefits under the Montana Workers' Compensation Act. Ms. Phelps was paid temporary total disability benefits of $91.23 per week from

- 2 -

November, 1983, through September, 1985. Ms. Phelps reached maximum healing in October, 1985, and her benefits were then converted to permanent partial disability benefits at the rate of $91.23 per week. Ms. Phelps received $91.23 weekly up to the date of the Workers' Compensation hearing.

A trial was held on May 7, 1986, before Robert J. Campbell, a hearings examiner for the Workers' Compensation Court. The parties submitted the following issues to the court for consideration:

1. What is the nature and extent of claimant's entitlement to permanent partial disability benefits?

2. Is claimant entitled to a lump sum conversion of any portion of her future entitlement, if any, to permanent partial disability benefits?

3. Is claimant entitled to an award of costs and attorney fees.

The hearings examiner found:

1. Ms. Phelps had an actual diminution in earning capacity of $37.60 per week, which under § 39-71-703, MCA, entitled her to permanent partial disability weekly benefits of $25.07 (66 2/3% of $37.60) for a period of 500 weeks.

2. Ms. Phelps did not present sufficient evidence for the court to determine if a lump sum conversion of a portion of her future benefits was in her best interest; and,

3. Ms. Phelps was not entitled to an award of reasonable costs and attorney fees.

On June 2, 1987, the Workers' Compensation Court issued an order adopting the findings of fact and conclusions of law of the hearings examiner and entered judgment. It is from this judgment that Ms. Phelps appeals.

Ms. Phelps contends that the Workers' Compensation Court erred in determining her lost earning capacity under § 39-71-703, MCA.

The standard for reviewing the Workers' Compensation Court's findings of fact is whether the court's findings are supported by substantial credible evidence in the record. Poppelton v. Rollins, Inc. (Mont. 1987), 735 P.2d 286, 44 St.Rep. 644. We find substantial credible evidence to support the findings of the Workers' Compensation Court and affirm the judgment.

The Workers' Compensation Court engaged in a series of calculations in order to determine Ms. Phelps' loss of earning capacity. The record disclosed that prior to her injury, Ms. Phelps worked an average of approximately 33 hours per week. The undisputed testimony of Russel Meech, administrator of the Livingston Convalescent Center, established that had Ms. Phelps continued in the employ of the nursing home (until the time of trial), she would have earned $5.33 per hour or approximately $175.68 per week. Ms. Phelps testified that at the time of trial, she was employed by Al's Pawn Shop in Bozeman and was paid $600 per month. Over the course of a year's time, $600 per month amounts to $138.08 per week. This was Ms. Phelps' average weekly salary at the time of trial. This amounts to an actual loss of $37.60 per week. The Workers' Compensation Court held under § 39-71-703, MCA, that Ms. Phelps is entitled to receive $25.07 as weekly compensation for the permanent partial disability. We find there is substantial credible evidence supporting the finding of the Workers' Compensation Court and we affirm their judgment.

Ms. Phelps submits that the Workers' Compensation Court erred in considering her wages from her post-injury employment at Al's Pawn Shop when determining her loss of earning capacity under § 39-71-703, MCA. We disagree.

Ms. Phelps premises her contention on the letter from Al Williams (the owner of Al's Pawn Shop) which was stipulated

- 4 -

into evidence by both parties. In the letter, Mr. Williams referred to Ms. Phelp's job as "make work or psuedo work." The letter goes on to say "we called it (Ms. Phelp's work) a job to keep from calling it charity and hurting her feelings." However, Ms. Phelps testified that she was involved in all facets of the operation of the pawn shop; that she was at times left alone to run the business; that she was responsible for doing the bookkeeping for the business; that she waited on customers and that she bought and sold used merchandise. Ms. Phelps provided the Workers' Compensation Court with substantial credible evidence to find that she was indeed employed by Al's Pawn Shop. As such the Workers' Compensation Court correctly considered Ms. Phelp's wages from her employment when determining her loss of earning capacity under § 39-71-703, MCA.

Ms. Phelps also emphasizes this Court's holding in Fermo v. Superline Products (1978), 175 Mont. 345, 574 P.2d 251, wherein we delineated a number of factors that could affect the reliability of post-injury earnings.

> Unreliability of post-injury earnings may be due to a number of variables:
>
> 1. Increase in general wage levels since the accident.
>
> 2. Claimant's own maturity or training.
>
> 3. Longer hours worked by the claimant after the accident.
>
> 4. Payment of wages disproportionate to capacity to work out of sympathy to claimant.

Fermo, 175 Mont. at 349, 574 P.2d at 253.

Ms. Phelps alleges error on the part of the Workers' Compensation Court in failing to consider the number of hours (54) that comprised her post-injury work week when

determining her loss of earning capacity. Ms. Phelps further submits that because of the longer hours worked her post-injury earnings are unreliable. The evidence presented to the Workers' Compensation Court on this point is conflicting. Al Williams states (in his letter stipulated into evidence) "For the most part she (Ms. Phelps) worked about 40 hours per week." On the other hand, Ms. Phelps testified that she was working 54 hours per week.

Although Ms. Phelps did present evidence relating to the Fermo factors, there was evidence to the contrary presented which the Workers' Compensation Court found to be credible and upon which it based its decision. "We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact." Cuellar v. Northland Steel (Mont. 1987), 736 P.2d 130, 131, 44 St.Rep. 778, 780.

Ms. Phelps further argues that the Workers' Compensation Court erred in failing to adjust the wages from her employment at Al's Pawn Shop to reflect the fact that the employer was not withholding taxes. Ms. Phelps' position regarding this issue is without merit.

The sole question regarding this issue is what was Ms. Phelps earning in her post-injury employment at Al's Pawn Shop. The fact that federal withholdings were not taken from her paycheck is irrelevant. The unrefuted evidence in the record clearly shows that Ms. Phelps was earning $600 per month. As such there is substantial credible evidence in the record to support such a finding by the Workers' Compensation Court.

Ms. Phelps next submits that the Workers' Compensation Court erred in not accepting the testimony of Cliff Larsen, a vocational rehabilitation expert, regarding her pre-injury earning capacity. Mr. Larsen testified that Ms. Phelps had a pre-injury wage range of somewhere between $3.35 to $13.10

per hour. Ms. Phelps contends that $8.22 per hour (the average of $3.35 and $13.10) represents her pre-injury earning capacity, and as such her permanent partial disability should be predicated upon that wage.

Mr. Larsen in determining Ms. Phelps pre-injury earning capacity included a broad range of jobs in determining her normal labor market and wage range. Mr. Larsen included occupations that were not part of Ms. Phelps' normal labor market. In the immediate case, Mr. Larsen went outside of the parameters of Ms. Phelps' normal labor market when arriving at her pre-injury earning capacity. We affirm the findings of the Workers' Compensation Court regarding Ms. Phelps pre-injury earning capacity.

Ms. Phelps next contends that the Workers' Compensation Court erred in excluding the value of sick leave and other fringe benefits in calculating her wage rate (under § 39-71-116(20), MCA (1985)), which in turn determined her entitlement to benefits. We find the contrary to be true.

Section 39-71-116(20), MCA (1985), provides:

> "Wages" means the average gross earnings received by the employee at the time of the injury for the usual hours of employment in a week, and overtime is not to be considered. Sick leave benefits accrued by employees of public corporations as defined by subsection (16) of this section, are considered wages.

If the intent of the legislature can be determined from the plain meaning of the words utilized in the statute, this Court will not go further and apply any other means of interpretation. Glaspey v. Workman (Mont. 1988), ___ P.2d ___, 45 St.Rep. 226; Murphy v. State of Montana (Mont. 1987), 748 P.2d 907, 44 St.Rep. 2030; State v. Hubbard (1982), 200 Mont. 106, 649 P.2d 1331.

It is clear from the plain meaning of the words used by the legislature in § 39-71-116(20), MCA (1985), that sick leave benefits are included in determining wages only when the claimant is an employee of a public corporation. Ms. Phelps was not an employee of a public corporation at the time of her injury. As such the Workers' Compensation Court correctly excluded her sick leave benefits when determining her wages.

In Linton v. State Compensation Insurance Fund (Mont. 1988), 749 P.2d 55, 45 St.Rep. 68, this Court engaged in an exhaustive examination of whether fringe benefits should be included as part of an employees wages for purposes of the Workers' Compensation Act. In Linton, we held:

> [T]he term "wages" under the workers' compensation act does not include employer contributions to funds that provide health or life insurance, retirement, training, vacation and pension or disability payment. (Emphasis added.)

Litton 749 P.2d at 59, 45 St.Rep. at 73.

We affirm the holding of the Workers' Compensation Court in excluding the value of fringe benefits when determining an employee's wages.

Ms. Phelps alleges that the Workers' Compensation Court erred in refusing to grant a partial lump sum conversion of her future entitlement to permanent partial disability benefits. We affirm the holding of the Workers' Compensation Court on the issue of lump sum conversion.

The Workers' Compensation Court has general discretion to grant lump sum awards. Section 39-71-741, MCA. Ms. Phelps incurred her injury prior to the 1985 and 1987 amendments to § 39-71-741, MCA. An injured worker's rights vest at the time of injury and as such those amendments are of no import in this case. Buckman v. Montana Deaconess Hospital (Mont. 1986), 730 P.2d 380, 43 St.Rep. 2216.

The relevant law for this case was stated in Willoughby v. General Accident Fire & Life (1980), 187 Mont. 253, 256, 609 P.2d 700, 701, wherein this Court held

> Where the best interests of the claimant are generally served by paying compensation in regular periodic installments, the conversion of benefits to a lump sum settlement has been recognized as the exception rather than the rule. (Citations omitted.)

Claimant bears the burden of justifying departure from periodic payments. Legowik v. Montgomery Ward & Co. (1971), 157 Mont. 436, 486 P.2d 867. The Workers' Compensation Court in its conclusions of law held that Ms. Phelps did not present sufficient evidence to the court to allow for a determination of whether a lump sum conversion would be in her best interests. Further, the Workers' Compensation Court found Ms. Phelps' lump sum requests deficient in several respects.

> First, it is not clear who owes the obligations submitted, the claimant or her husband. Secondly, it is not clear the date that such obligations were incurred and whether they were before or after the injury. Third, the evidence is not clear which obligations have been written off by the creditors. Finally, no statement of the necessity of payment is included to show why the proposed payments are necessary and would be in the best interest of the claimant.

Ms. Phelps contends at the very least she is entitled to a lump sum conversion in the amount of $2,000 in order to pay for dental work and $874 worth of debts. Ms. Phelps' request is based upon an estimate from her dentist that was not provided to the defendant within the deadline for exchange of exhibits as set by the court. The Workers' Compensation Court properly refused to consider these estimates as Ms. Phelps' conduct deprived the defendant of the opportunity of verifying the estimates prior to trial. It is clear from the

evidence in the record that the Workers' Compensation Court had sufficient jusification for denying plaintiff's request for a lump sum conversion.

This Court will not interfere with the decision to award or deny a lump sum settlement absent an abuse of discretion on the part of the Workers' Compensation Court. Johnson v. Gibson (Mont. 1987), 740 P.2d 665, 44 St.Rep. 136; Byrd v. Ramsey Engineering (Mont. 1985), 701 P.2d 1385, 42 St.Rep. 991; Willoughby v. General Accident, Fire & Life (1980), 187 Mont. 253, 609 P.2d 700. Accordingly, we affirm the decision of the Workers' Compensation Court in denying Ms. Phelps' request for a lump sum conversion.

Lastly, Ms. Phelps contends that under § 39-71-612, MCA, she is entitled to an award of costs and attorney fees incurred in the lower court and this Court.

An award of attorney fees from the insurer under § 39-71-612, MCA, is predicated on the plaintiff being successful in obtaining benefits greater than the amount previously paid or tendered by the insurer or employer. Ms. Phelps was unsuccessful in her attempt to obtain benefits greater than the amount paid or tendered by her employer. Therefore, we affirm the decision of the Workers' Compensation Court that Ms. Phelps is not entitled to an award of costs and attorney fees.

The judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices