No.  94-315

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995


PATRICIA  SULLIVAN,

        Petitioner  and  Appellant,

    -vs-

AETNA LIFE & CASUALTY,

        Defendant/Insurer  and
             Respondent,

ST.  JAMES  COMMUNITY  HOSPITAL,

        Employer.

FILED

APR 12 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   Workers'  Compensation  Court,  State  of  Montana
               The  Honorable  Mike  McCarter,  Judge  presiding.


COUNSEL OF RECORD:

        For  Appellant:

            Bernard  J.  "Ben"  Everett;  Knight,  Dahood,
            McLean,  Everett  &  Dayton,  Anaconda,  Montana


        For  Respondent:

            Brendon  J.  Rohan;  Poor,  Roth  &  Robinson,
            Butte,  Montana


                        Submitted  on  Briefs:   February  9,  1995

                                 Decided:   April  12,  1995

Filed:


_____
                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Patricia Sullivan (Sullivan) appeals from the April 21, 1994 order of the Workers' Compensation Court denying her petition for a lump sum advance against permanent partial disability benefits that would otherwise be available to her at age 65. We affirm.

Sullivan injured her neck on October 5, 1983 in the course and scope of her employment for St. James Community Hospital. St. James and its insurer, Aetna Life and Casualty (Aetna) accepted liability for her industrial accident and do not challenge that she is permanently totally disabled. Aetna has continuously paid Sullivan total disability benefits. Despite numerous surgeries, she continues to suffer severe pain in her neck, arms, and hands and severe headaches.

Sullivan seeks a lump sum advance against permanent partial disability benefits which she would otherwise begin receiving upon conversion of her social security benefits to retirement benefits. See § 39-71-710, MCA (1985). Sullivan seeks $41,582.29 to pay for: (1) bank loans taken out for a motor home and to repay her mother for mortgage payments; (2) a credit card debt; and (3) repair of two motor vehicles. The sum requested does not include $10,000 Aetna recently paid to Sullivan to pay off a loan from her mother and two credit card debts. Sullivan's monthly income is $1,662.56, consisting of $732 from social security benefits and $930.56 from workers' compensation benefits. Her annual income, which is tax free, is $19,950.72.

Sullivan reported monthly expenses of $2,035.05. This amount

2

includes, among other expenses, $466.07 for her motor home loan, $245.81 for insurance, maintenance, and registration of her vehicles, $130 for a bank loan taken out to repay her mother for a prior loan, and $100 for a credit card debt.

Sullivan lives with her parents, ages 76 and 84, and is a part-owner of the house. In recent years, she has paid for new water pipes, new windows and doors, and aluminum siding for the house. Sullivan testified that because her mother cooks and takes care of her, she pays $175 a month rent to her parents. She also testified that she pays one-half of the household expenses but later conceded that some monthly expenditures reported were actually total household costs rather than just her share.

In 1989, Sullivan purchased a motor home for $40,000, which she testified she uses in the summer "to escape to the country," and occasionally to sleep or read in while it is parked at home. She pays approximately $523 per month to finance, register, and insure the vehicle. The Workers' Compensation Court noted that this amounts to over 26% of her current monthly expenditures. She testified she has not sold the motor home because she cannot "get value out of it" and that she cannot rent one because of insurance. She provided no support for these claims and on cross-examination conceded that she in fact has not even tried to sell the motor home.

Testimony at trial indicated that Sullivan received a personal injury settlement in 1990. However, she claimed she did not know the amount of the settlement, although respondent's counsel

3

suggested it was approximately $40,000. Sullivan could not recall the amount she received after attorney's fees and was confused as to how she had spent the money. She initially testified that she used the money to pay off a vehicle loan but on cross-examination stated that her mother had paid that loan.

Sullivan testified that she has difficulty handling her money. The Workers' Compensation Court found that Sullivan does not have a good understanding of her own financial affairs, concluding that she has had numerous opportunities to reduce her monthly expenses, including selling her motor home, paying only her share of household living expenses, and repairing and maintaining only one vehicle. The Workers' Compensation Court further considered that Sullivan is only 48 years old and concluded that her ability to support herself in the future could be jeopardized if she received a lump sum payment. Concluding that Sullivan did not establish by a preponderance of credible evidence that the lump sum advance requested was in her best interest, the Workers' Compensation Court denied her request. This appeal followed.

The sole issue on appeal is whether the Workers' Compensation Court erred when it concluded that a lump sum advance is not in Sullivan's best interest.

### Standard of Review

Workers' Compensation Court decisions denying lump sum settlements will not be interfered with on appeal unless there is an abuse of discretion. Byrd v. Ramsey Engineering (1985), 217 Mont. 18, 21-22, 701 P.2d 1385, 1387; Kent v. Sievert (1971), 158

Mont. 79, 81, 489 P.2d 104, 105. The Workers' Compensation Court's findings are presumed to be correct and will be affirmed if supported by substantial evidence. *Byrd*, 701 P.2d at 1387. Sullivan has the burden of proving that the lump sum conversion is in her best interest. Stanley Structures v. Scribner (1992), 253 Mont. 236, 241, 833 P.2d 166, 169.

## Discussion

Many of our prior decisions have listed three elements (outstanding debt, pressing need, and best interest of the claimant, his family, and the general public) to be considered when evaluating lump sum settlements. The focus, however, has always been on the best interest component. See, e.g., *Stanley Structures*, 833 P.2d 166; *Byrd, 701* P.2d 1385. While outstanding indebtedness is a factor identified by this Court, both indebtedness and pressing need have, in fact, been secondary factors with best interest being the primary criterion.

As early as 1929, this Court established that for industrial accident claims, periodic payments should be the rule and lump sum settlements should be the exception. Landeen v. Toole County Refining Co. (1929), 85 Mont. 41, 47, 277 P. 615, 617. In Willoughby v. Arthur G. McKee & Co. (1980), 187 Mont. 253, 257, 609 P.2d 700, 702, the Court recognized that lump sum settlements are granted where there is outstanding indebtedness, pressing need, or where the best interests of the claimant, his family, and the general public will be served. In *Willoughby,* this Court elevated the best interest standard over the other two criteria:

5

"The criteria determinative of the advisability of conversion to a total or partial lump sum award have generally been held to be '. . . the best interests of the claimant, his family and for the best interests of the public . . . .' Kustudia v. Ind. Acc. Brd. [1953], 127 Mont. 115, 123, 258 P.2d 965, 969. See also Legowik v. Montgomery Ward [1971], 157 Mont. 436, 486 P.2d 867. The existence of a 'pressing need' and/or 'outstanding indebtedness' has likewise been held to be relevant criterion." [Citation omitted.]

*Willoughby,* 609 P.2d at 702.

In *Byrd,* which considered the petitioner's debts, this Court acknowledged the best interest rule established in *Willoughby* but further stated:

The [Willoughby] court goes on to say:
Lump sum settlements are only granted where there is "outstanding indebtedness,' "pressing need," or where "the best interests of the claimant, his family and the general public will be served."

*Byrd,* 701 P.2d at 1387. The *Byrd* Court then went on to include all three factors in its review, rather than just best interest. In Crittendon v. Terri's Restaurant (1991), 247 Mont. 293, 295, 806 P.2d 534, 536, the Court restated the three-part test from *Willoughby* but further stated:

[w]hile the presumption is in favor of periodic payments, where the best interests of the parties will be served by lump sum conversions, "they should be awarded without hesitancy . . ." [Citation omitted. I

The Court analyzed the facts of that case primarily in terms of the best interest test but it also considered pressing need.

In *Stanley Structures,* our most recent decision on this issue, the claimant had petitioned for a lump sum payment to pay off debts. Even though the claimant's outstanding indebtedness was at issue, the Court listed all three factors to be considered for lump

6

sum settlements and then based its decision on the best interest standard. *Stanley Structures, 833* P.2d at 169. The Court affirmed the denial of the lump sum request, stating that:

> [a]n additional lump sum would benefit [the claimant] by reducing his monthly expenses at the present time. However, the fact that [the claimant's] debts exceed his income does not require conversion of [his] weekly benefits into a lump sum settlement. Ruple v. Bob Peterson Logging Co. (1984), 209 Mont. 276, 281, 679 P.2d 1252, 1254.

*Stanley Structures, 833* P.2d at 169. This analysis demonstrates that the mere fact that the claimant has outstanding indebtedness is not sufficient grounds for lump sum settlement.

These cases indicate that the claimant's best interest is the primary factor to be considered when evaluating lump sum settlements. Where appropriate, courts should also consider outstanding indebtedness and pressing need but these are to be components of the best interest analysis. Considering that debt is a significant part of our society, including home mortgage, credit card, medical expenses, and student or farm loans, it is unrealistic to conclude that outstanding debt alone is sufficient grounds to grant a lump sum settlement. Were that the case, most claimants could get lump sum settlements on demand. This would be contrary to the express policy that regular payments are the rule rather than the exception. *Landeen, 277* P. at 617. Similarly, pressing need, considered alone, is particularly subjective and ignores the consequences of granting a lump sum settlement. The best interest test embraces all factors, including outstanding debt and pressing need.

7

The dissent suggests that the majority of this Court along with the trial court patronized Sullivan by passing judgment as to her "best interests." This criticism is based upon a misconception of the role of this Court. The majority has not made an independent determination as to what is in Sullivan's best interest. Rather, we sit in review of the decision of the Workers' Compensation Court. In affirming the Workers' Compensation Court, we have not made an independent, de novo determination of Sullivan's best interests. We have merely reviewed the conclusions of the Workers' Compensation Court and have decided that that court did not abuse its discretion.

In accusing the courts of being patronizing and judgmental, the dissent assumes that lump sum advances are available, if not as a right then certainly as a matter of mathematics; i.e., to anyone whose debts exceed his/her income. This, of course, is not the law. *Stanley Structures, 833* P.2d at 169. This Court and the trial court are operating under legal precedent which requires that lump sum advances are the exception and are available only upon a showing, by the claimant, that such an advance is in the best interests of the claimant. Krause v. Sears Roebuck & Co. (1982), 197 Mont. 102, 106-07, 641 P.2d 458, 460-61. If the Court were addressing the issue of whether the "best interests" test should be retained, the comments in the dissent might have some relevance. That issue, however, is not before the Court. Everyone, Sullivan and dissenters included, agrees that the trial court was required to resolve this petition for a lump sum advance by application of

8

the best interests standard. So long as that remains the standard, it serves little purpose to accuse the judiciary of being judgmental. The best interests standard, by its very nature, requires the Workers' Compensation Court to exercise its discretion--that is, to use its judgment.

Despite the protestations in the dissent, it is not the function of this Court to substitute its judgment for that of the trial court. This Court will not reverse the Workers' Compensation Court's determination of best interests unless it appears that the court has abused its discretion. Given the facts presented to the Workers' Compensation Court and given that court's observations as to Sullivan's lack of credibility and lack of money managing abilities, we see no basis for concluding that the court abused its discretion.

The facts of this case are distinguishable from those cases where we held it was an abuse of discretion to deny the claimant's lump sum award. See, e.g., Utick v. Utick (1979), 181 Mont. 351, 593 P.2d 739 (claimant treated unfairly and presented detailed investment plan); *Byrd,* 701 P.2d 1385 (claimant would lose house without lump sum). In the instant case, the Workers' Compensation Court considered that Sullivan's motor home consumed over 26% of her income, that she maintained two other vehicles, maintained more than her share of household expenses, and that she has difficulty managing her money. The court concluded that Sullivan failed to sufficiently demonstrate that all of her monthly expenses are for her own personal maintenance or that she cannot make ends meet if

9

she properly manages her money and pays only her share of household expenses.   In light of the above analysis and the substantial evidence supporting the Workers' Compensation Court's findings and conclusions, we hold that the Workers' Compensation Court did not abuse its discretion.   Affirmed.

_W. William Bryburst_
Justice

We concur.

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_____

_____

_____
Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion. I would reverse the Workers' Compensation Court's denial of claimant's petition to convert a portion of her biweekly disability benefits to a lump sum. Based on the uncontroverted evidence, I conclude that it was clearly in her best interest that she do so.

Patricia Sullivan was 48 years old at the time of the trial court's decision, and according to the court's findings, is entitled to total disability benefits for an additional 17 years at the rate of $930.56 a month. She sought to convert a portion of her future disability benefits in the amount of $41,582.29 to a lump sum to pay debts for which she currently makes monthly payments in the amount of $696.44.

Advancing the necessary amount would only require a reduction of her total disability benefits in the amount of $205.46 per month. In other words, by converting a portion of her future disability benefits to a lump sum, paying it to her at the present time, and allowing her to pay off her current debts, she could realize a positive improvement in her current cash flow equal to $490.98 per month.

Section 39-71-741, MCA (1983), which was in effect at the time of claimant's injury, authorized a conversion of future disability benefits to a lump sum when requested by the claimant. We have previously held that where the insurer denies conversion of those benefits to a lump sum, the standard by which the courts should resolve the dispute between the parties is as follows:

11

The general rule is that disability payments under the Workers' Compensation Act are biweekly. They may, however, at the discretion of the Workers' Compensation Division, be converted into a lump sum settlement. While lump sum settlements are an exception to the general rule, they are not looked upon with disfavor and should be awarded without hesitancy where the claimant's interest would be best served.

*Krause v. Sears Roebuck & Co.* (1982), 197 Mont. 102, 106, 641 P.2d 458, 460 (citing *Willoughby v. Arthur G. McKee* &Co. (1980), 187 Mont. 253, 256, 609 P.2d 700, 702).

The Workers' Compensation Court, and the majority of this Court, have concluded that it is not in the claimant's best interest to use the benefits to which she is entitled in a form that would enable her to improve her cash flow and provide her with disposable income that she does not currently have. This conclusion makes no sense to me. The simple mathematics of the problem presented to us requires that we conclude otherwise.

In spite of the obvious conclusion that having nearly $500 extra cash a month to spend would be in anyone's best interest, the Workers' Compensation Court denied claimant's request based on its subjective opinion that Patricia spends a disproportionate amount of her income on a motor home, that she does not really need two vehicles, that she is paying a disproportionate share of household expenses, and that she has difficulty managing her money. The majority, in their opinion, approve of the Workers' Compensation Court's reasoning.

In reality, the evidence was that claimant's motor home is her only means of recreation and is important to the mental health and

*12*

well-being of a totally disabled person who has no other escape from a very restricted lifestyle. She cannot sell the motor home for enough to pay off the balance of the purchase price, even if she agreed with those more fortunate people who have decided that it is not necessary for her to own it.

While the fact that claimant owns two vehicles may sound excessive, one vehicle is a pickup truck which has been driven for 89,000 miles. The other is a van, which has been operated for 56,000 miles. Both are in bad shape and need substantial engine work. However, both are otherwise paid for and having them repaired is cheaper than the alternative of trying to finance a new vehicle.

Patricia is hardly deserving of this Court's, or the trial court's, criticism for trying to share household expenses with her 76-year-old mother and 84-year-old father, both of whom are retired and limited to social security income, and one of whom has substantial medical expenses for severe health problems. The world would be a better place if others were as conscientious. Neither is there any evidence in the record that Patricia's living expenses would be less if she left her mother and father's home and had to live independently.

Finally, it seems to me unduly judgmental to criticize someone as being a poor money manager when, due to her limited income, her inability to enjoy life as most people do, and her willingness to assist her elderly parents with certain basic necessities of life, her average monthly expenses exceed her average monthly income.

13

Furthermore, even if the trial court was correct in its finding that Patricia is not a good money manager, it should not be inferred from that finding that the money, if advanced, would not be spent to reduce her debts. Through her attorney, she offered to have the remaining advances, like the previous advances, made jointly payable to her and her creditors to assure that the money was spent on the purpose for which it was sought.

The role of the courts in resolving disputes which arise under § 39-71-741, MCA (1983), is to simply conclude, based on the evidence (usually the mathematics) presented, whether it is in the claimant's best interest that he or she receive disability benefits in one form, as opposed to another. A claimant should not be required to prove that all of his or her expenses, or all of the purposes for which he or she has incurred debt, meet with the trial court's approval, based upon the trial judge's value system. The simple fact in this case is that Patricia Sullivan incurred debts for understandable purposes which now require that she make monthly payments which she is unable to make in combination with her other monthly living expenses. However, even if that was not the case, she has proven that by converting a portion of her future disability benefits to a lump sum and paying off those debts, the expenses she would eliminate are more than three times the amount of the income she would lose. I conclude that this fact alone was sufficient to establish that conversion of her disability benefits to a lump sum for the purposes set forth in her petition was in her best interest.

14

Furthermore, contrary to the suggestion in the majority opinion, there is no misperception by the dissenting justices of this Court's role. This Court's role is to determine whether the Workers' Compensation Court abused its discretion when it denied the claimant an opportunity to use her benefits in a way that would enable her to live within her income when she clearly cannot do so otherwise. This Court's role is not to use the old "scope of review" dodge (which is applied selectively at best in this Court) to avoid applying a relatively simple "best interest" standard to the undisputed facts.

Neither do those who join in the dissent need an explanation of the role that precedent plays in this Court's decisions. The dissent is based on this Court's precedent. It clearly provides that lump sum conversions "should be awarded without hesitancy where the claimant's best interest would be best served." The only people who could claim that simple mathematics are not sufficient to divine the claimant's "best interests" in this case are people who have never had to struggle to make ends meet on disability checks.

If there was no abuse of discretion in this case, I cannot imagine a set of circumstances where one could be found.

As a final observation, I find it ironic that Patricia Sullivan's desire to convert some of her future disability benefits to a lump sum has caused Aetna Life and Casualty such great concern for her best interests.

The insurer now cares about whether she is paying an unfair proportion of her family's living expenses, whether she really needs two vehicles, or whether one would suffice, whether she would be better off renting a motor home, rather than owning one, and whether her family members couldn't do more for her personal care without being reimbursed for their time. One would think that these are normally issues best left to the individual, especially when all she is asking for is her own money in a different form. However, according to Aetna, the trial court, and this Court, Patricia Sullivan is no longer qualified to make those decisions by virtue of being the recipient of workers' compensation disability benefits. She, like many other injured workers, is surely damned by the pervasive and patronizing concern for her "best interest" that has been demonstrated by her insurer and this State's courts.

If only the insurers and self-insured employers in this State would show as much concern for an injured worker's best interests when it was time to accept responsibility for claims and pay disability benefits and medical expenses in a timely fashion, we certainly could reduce the amount of litigation in this area of the law.

However, judging by the number of disputes over disability, medical, death, and other workers' compensation benefits which have been submitted to this Court over the years, and the results of those disputes, this overriding concern for the best interests of injured workers is selective and infrequent at best.

16

For these reasons, I dissent from the majority opinion. I would reverse the judgment of the Workers' Compensation Court; I would award attorney fees and costs to the claimant; and I would impose the statutory penalty for the unreasonable denial of Patricia Sullivan's benefits.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent.

_____
Justice

17