No. 96-329

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JOSEPH EVANS,

Petitioner and Appellant,

v.

STATE COMPENSATION INSURANCE FUND,

Respondent and Respondent,

ROSCOE STEEL & CULVERT COMPANY,

Employer.

APPEAL FROM:  Workers' Compensation Court
The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brad L. Arndorfer, Billings, Montana

For Respondent:

Ann E. Clark, State Compensation Insurance Fund,
Helena, Montana

Submitted on Briefs:  October 10, 1996

Decided:  December 17, 1996

Filed:

FILED

DEC 17 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

Appellant Joseph Evans (Evans) appeals the findings of fact, conclusions of law, and judgment of the Workers' Compensation Court denying Evans' claim for a lump sum conversion of his future entitlement to permanent total disability benefits; denying Evans' request that the State Compensation Insurance Fund (State Fund) be ordered to recoup an earlier lump sum advance from benefits payable after Evans reaches the age of 65; denying attorney fees and costs; and dismissing Evans' petition.

We affirm.

We review the following issues:

1. Did the Workers' Compensation Court abuse its discretion when it denied Evans' request for lump sum conversion?

2. Did the Workers' Compensation Court correctly conclude that the 1994 contract for lump sum advance is clear and unambiguous?

## FACTS

In 1980, Evans suffered a shoulder injury while working as a laborer for Roscoe Steel in Billings, Montana. State Fund, Roscoe Steel's insurer, accepted liability for the injury and paid Evans both medical and wage loss benefits. In 1993, State Fund

2

determined that Evans was permanently totally disabled and converted his benefits to permanent total status.

On February 17, 1993, Evans requested a lump sum conversion of his remaining permanent total disability benefits. State Fund indicated in a letter to Evans' attorney that while it would not convert all of Evans' remaining benefits to a lump sum payment, it would be willing to "offer a lump sum if Mr. Evans can show the need for financial assistance. That lump sum would then be recovered on a biweekly basis until Mr. Evans reaches age 65."

Evans and State Fund agreed upon a lump sum advance of $68,750. Evans' primary purpose in pursuing the advance was to purchase a small home in Bridger, Montana. Evans believed that he was putting his life, and his fiance's life, in danger by remaining in his Billings neighborhood. Evans had apparently been involved as an informant in a Billings drug bust, had been the intended victim of a drive-by shooting, and was anxious to leave the city.

Evans' 1994 "Petition For Lump Sum Advance Of Permanent Total Disability Benefits" provided in relevant part:

> I therefore petition the Department of Labor and Industry for a lump sum advance on any compensation in the amount of SIXTY-EIGHT THOUSAND AND SEVEN HUNDRED FIFTY AND NO/100TH DOLLARS ($68,750.00).

> I understand the insurer may recoup this lump sum advance from any type of biweekly benefits or any type of award or settlement I receive in the future.

> I UNDERSTAND:

> The above amount will be recovered by age SIXTY FIVE (65).

3

Evans' petition was approved by State Fund and by the Department of Labor and Industry. The order of approval issued by the Department of Labor and Industry stated that the amount of Evans' advance "will be recovered by age SIXTY-FIVE (65)."

After receiving his advance, Evans purchased the house in Bridger. The purchase price was initially $55,000, but Evans successfully renegotiated a lesser price after certain structural defects were discovered. Evans purchased the house for $35,000, intending to use the $20,000 savings for repairs.

After State Fund issued Evans the lump sum advance, it reduced Evans' biweekly benefits by $134.66, an amount calculated to recoup the advance by the time Evans reaches age 65. Evans' attorney wrote to State Fund protesting this method of recoupment, indicating in the letter that it was his understanding that State Fund would recoup the amount of the advance "from the backside of the contract as had been discussed." Evans' attorney explained in the letter that by age 65 Evans would be eligible for social security benefits and would be better able to withstand a decrease in workers' compensation benefits. Evans' attorney requested that the entire case be settled so that Evans could purchase an annuity to provide himself future income. State Fund rejected this request, and Evans thereafter filed the action in the Workers' Compensation Court that we are reviewing here.

Evans' petition to the Workers' Compensation Court sought a lump sum conversion of the entire amount of benefits due him during his lifetime. Evans also requested that the court order State Fund

4

to recoup its 1994 advance from the distal end of Evans' benefits, after he reaches age 65. After a hearing, the court denied Evans' requests and dismissed his petition. It is from this judgment that Evans appeals.

## ISSUE ONE

Did the Workers' Compensation Court abuse its discretion when it denied appellant's request for lump sum conversion?

Evans contends that the court should have considered his best interests before ruling on his request for lump sum conversion. Evans argues that because his biweekly benefits checks are subject to recoupment his monthly income is well below his monthly expenses. Evans explains that the $68,750 he was advanced in 1994 has been depleted by the purchase of the Bridger house, the unexpectedly high cost of repairing that house, and attorney fees. Evans contends that it is undoubtedly in his best interests to receive a lump sum rather than biweekly payments: with a lump sum, he can finish the repairs to make his Bridger home habitable; pay off debts incurred as a result of the repairs already made on the Bridger house; and purchase an annuity to provide himself future income. On the other hand, Evans argues, the biweekly payments are simply insufficient for monthly necessities, let alone house repairs or the purchase of an annuity.

We have stated that "Workers' Compensation Court decisions denying lump sum settlements will not be interfered with on appeal unless there is an abuse of discretion." Sullivan v. Aetna Life & Casualty (1995), 271 Mont. 12, 15, 894 P.2d 278, 280 (citing Byrd

5

v. Ramsey Engineering (1985), 217 Mont. 18, 21-22, 701 P.2d 1385, 1387; Kent v. Sievert (1971), 158 Mont. 79, 81, 489 P.2d 104, 105). Our deferential standard of review reflects our holdings that lump sum payments are the exception to the rule of biweekly payments, Stanley Structures v. Scribner (1992), 253 Mont. 236, 240, 833 P.2d 166, 169 (citing Phelps v. Hillhaven Corp. (1988), 231 Mont. 245, 252, 752 P.2d 737, 741-42), and that the claimant has the burden of proving that a lump sum conversion of his future permanent total disability benefits is in his best interests, Sullivan, 894 P.2d at 280; Stanley Structures, 833 P.2d at 169.

Here, Evans failed to meet his burden of proof. While he testified that his income from his reduced biweekly benefits checks was insufficient to meet his own needs and pay his debts, he neglected to provide the court with any documentary evidence to support this contention. As well, Evans did not present to the court an investment plan with any degree of detail. Furthermore, as noted by the court, Evans' annuity quote which was presented at trial was flawed in that its computations included as benefit monies due him the $68,750 Evans was advanced in 1994. The court concluded:

> In this case, I am not satisfied that a lump sum advance to pay indebtedness is in the claimant's best interest. *His explanation of his expenditures is undocumented, wholly unsatisfactory, and not credible.* If he is to be believed, he has expended almost as much ($28,000 to $29,000) on his house in Bridger as its entire purchase price ($35,000), and still needs $30,000 to finish repairs. If he is believed, necessary repairs will cost almost twice as much as the original cost of the house.
> According to claimant, his run-up of his credit card balances included money for his living expenses. Adding

6

that money to his biweekly benefits and the $5,000 he says he used from the 1994 lump sum advance to pay for living expenses, the money he has had available for monthly living expenses over the last 18 months has been far in excess of his monthly income prior to the 1994 advance, thus indicating an inability to manage money. *His undocumented, perfunctory and superficial presentation concerning his expenditures over the last 18 months and the need for additional house repairs*, also raises series [sic] questions about his ability to manage money.

. . . .

There is also no basis for awarding claimant a lump sum to purchase an annuity. Claimant's assertion that he will be better off with an annuity is identical to the argument made and rejected in LaVe v. School Dist. No. 2, 220 Mont. 52, 55, 713 P.2d 546, 547-48 (Mont. 1986).

> In the instant case, appellant advances two principle reasons for requesting a lump sum payment. They are: (1) appellant and her husband have outstanding debts, and (2) appellant and her husband wish to invest the money and receive a return which would be greater than the weekly benefits. Neither appellant nor her husband have proposed a concrete, specific plan of investment. Neither of the two have personally contacted an investment or financial counselor. An investment counselor did testify for appellant on the return that appellant could expect if she was granted, and invested, a lump sum award. In Kent v. Sievert (1971), 158 Mont. 79, 81, 489 p.2d 104, 105, this Court held that where a claimant requested a lump sum payment proposing "to put it 'on interest,'" that proposed use was insufficient to warrant a lump sum payment. Kent is still the law and appellant's desired investment is not reason, by itself, to award her a lump sum payment. Otherwise, any claimant desiring a lump sum award could secure one by proposing to invest it. This would defeat the statutory intent of Montana's Workers' Compensation scheme, as lump sum awards are to be the exception. Section 39-71-741, MCA.

(Emphasis added.)

The record shows that with the exception of Evans' testimony, which the court did not find particularly credible, the court was not

7

presented with any evidence which would have prompted it to grant Evans' request for a lump sum conversion. The court did not abuse its discretion when it denied Evans' request for a lump sum conversion.

## ISSUE TWO

Did the Workers' Compensation Court correctly conclude that the 1994 contract for lump sum advance is clear and unambiguous?

Evans argues that the provision in his signed petition for lump sum advance which states his understanding that the amount advanced to him would be recovered by age 65 is ambiguous. Evans contends that the provision is susceptible to the interpretation and understanding he had when he signed the petition, that recovery of the advanced amount would not begin until he neared age 65. Evans claims that State Fund concurred with this understanding during preliminary negotiations. The provision states:

> I understand the insurer may recoup this lump sum advance from any type of biweekly benefits or any type of award or settlement I receive in the future:

> I UNDERSTAND: The above amount will be recovered by age SIXTY FIVE (65).

The court concluded that "[t]he agreement expressly provides that the State Fund shall recoup the advance from claimant's biweekly benefits and that recoupment shall be completed by the time claimant reaches age 65." The court refused to allow testimony on the matter, and denied Evans' request that the court order State Fund to recoup its 1994 advance from the distal end of his benefits, after he reaches age 65.

8

The court's conclusion that the provision is unambiguous is a conclusion of law. We must determine if that conclusion was correct. Stanley Structures, 833 P.2d at 169. The provision expressly allows State Fund to recoup the amount of the advance in a number of ways: from Evans' biweekly benefits; from a future award; or, from a future settlement. The provision expressly requires that the amount of the advance be recovered by age 65.

Evans has apparently confused clearly expressed alternatives with ambiguity. There is nothing ambiguous about any of the recovery options available to State Fund under this provision of Evans' petition. Evans' contention that State Fund was not *required* to recoup its advance from his biweekly benefits is not relevant to the issue of ambiguity. The court correctly concluded that the provision clearly and unambiguously allows State Fund to recoup its advance from Evans' biweekly benefits. The court's subsequent decisions to disallow testimony regarding the provision and to deny Evans' request to order State Fund to recoup its advance after Evans reaches age 65 were also correct. "The rule has long been that where no ambiguity exists in the written documents, no parol evidence may be taken, and the duty of the court is simply to apply the language as written." Montana Bank of Circle v. Ralph Meyers & Son, Inc. (1989), 236 Mont. 236, 243, 769 P.2d 1208, 1212 (citation omitted).

Affirmed.

_____
Justice

9

We Concur:

_____

_____

_____

_____
Justices

10

December 17, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Brad L. Arddorfer
Attorney at Law
P.O. Box 412
Billings, MT 59103-0412

Ann E. Clark, Legal Counsel
State Compensation Insurance
P.O. Box 1728
Helena, MT 59624-1728

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy